## DANIELS V. MILLER.

1. Under the act of 1885 regulating appeals to the supreme court, the trial court has no voice whatever in determining whether an appeal will or will not lie in given cases. The supreme court is the only tribunal to pass upon this question.

2. A *supersedeas* is not essential to such an appeal; it is an incidental and collateral privilege; the filing of a *supersedeas* bond cannot be denied by either the trial court or clerk, upon the ground that no appeal lies, and the clerk may be compelled by *mandamus* to approve and file a bond which he admits to be good and sufficient.

3. *Per* BECK, C. J.— That before allowing *mandamus* to compel the clerk to approve such bond and issue a *supersedeas*, this court must determine whether or not an appeal lies from the particular judgment or order.

PETITION for *mandamus*.

Messrs. PATTERSON and THOMAS and Messrs. BENEDICT and PHELPS, for petitioner.

Messrs. TELLER and ORAHOOD, for respondent.

STONE, J.   The questions presented arise upon demurrer to the petition filed in this court praying for a writ of *mandamus* to compel the respondent, as clerk of the district court of Arapahoe county, to approve and file a certain appeal bond tendered him for approval as clerk aforesaid in an action pending in said district court.

The petitioner sets forth, in detail, that one Lillian B. Daniels, wife of this petitioner, heretofore filed in said district court her complaint praying that a certain agreement of separation of the said Lillian and this petitioner, as husband and wife, theretofore made and entered into by and between said parties, be set aside, for reasons set forth in the complaint aforesaid, and also praying for specific alimony to be decreed the complainant; but not asking for a dissolution of the bonds of matrimony. For further relief, the complainant prayed that a specific sum be decreed to be paid into court by the said William B. Daniels for costs and for attorney's fees, and a further sum to be paid monthly as alimony to the complainant *pendente lite*.   That about the same time a certain other complaint was filed in said court by the said Lillian,

praying substantially the same relief as in the first-mentioned complaint. That full answers were filed to said complaints, and that both parties filed affidavits touching the respective allegations of said complaints and answers. That thereafter the said district court, without a hearing upon the merits of the controversy, but upon the said pleadings and affidavits, ordered, adjudged and decreed that this petitioner, the said William B. Daniels, should pay into court for the use of the complainant, the said Lillian, the sum of $1,000; $700 thereof as attorney's fees for her counsel, and $300 for her use in procuring testimony, and other expenses in the prosecution of her suit; and also the further sum of $75 per month as alimony *pendente lite*, until the further order of the said court. That thereupon this petitioner duly served notice of his appeal from all of said order and decree, and that he moved the said court to fix the amount of the bond or undertaking on such appeal, which motion was denied, for the reason that, in the opinion of said court, no appeal lay from said order and decree. That thereafter said petitioner executed a bond, with good and sufficient surety, for the purpose of having the same operate as a *supersedeas* or stay of the said order and decree pending the appeal therein, and tendered the same to the respondent, Henry Sparnick, then clerk of said district court, and asked him to approve the same; but that said respondent, as clerk as aforesaid, refused so to do, and indorsed on said bond his reason for refusal, in the following words and figures, to wit: "Tendered for approval this 29th day of October, A. D. 1885; but I decline to approve this bond, not because of the insufficiency of the surety, but because I feel bound to interpret the order of the district court in this matter as declaring the case to be one which does not permit appeal;" and signed the said indorsement as clerk as aforesaid. The said bond is set out in the petition, and is in the sum of

$10,000. Petitioner prays that the respondent Sparnick, as clerk of said district court, be commanded to approve said bond, or show cause, etc.

Upon the facts set out in this petition we allowed the alternative writ, as prayed; counsel stipulating a waiver of the issuance and service of the writ, and that respondent would appear and obey the mandate, by either approving the bond or showing cause on or before a day named. Thereafter, upon the day set for hearing (the respondent Sparnick having in the meantime deceased, and his successor in office, Arthur S. Miller, having been substituted as respondent herein), the respondent, by his counsel, appeared; and, instead of obeying the writ, elected to show cause by demurring to the petition on the ground that the facts therein stated were insufficient to warrant the issuance of the writ prayed.

The questions for our determination, upon the issue thus made, depend for solution chiefly upon the terms and construction of the late statute (Session Laws 1885, p. 350), entitled "An act in relation to appeals to the supreme court, and concerning the jurisdiction thereof and practice therein." The principal question involved is whether the clerk of the trial court has, under said act, discretionary authority to refuse the approval of an appeal bond, on the ground that the judge of said court has held that the order or judgment from which an appeal is sought is not appealable. Underlying this question, and as a corollary thereto, is the question: Has the trial court itself, or the judge thereof, the power or discretion to refuse an appeal, or determine that an appeal will not lie when sought under the provisions of the act mentioned?

The first section of the act declares that "the supreme court has appellate jurisdiction over all judgments and decisions of all other courts of record, as well in case of civil actions as in proceedings of a special or independent character.   *   *   *"

Section 2 of the act is as follows: "An appeal may also be taken to the supreme court from the following orders made by the trial court, or the judge thereof: *First.* An order made affecting a substantial right in an action, when such order in effect determines the action, and prevents a judgment from which an appeal might be taken. *Second.* A final order made in special proceedings, affecting a substantial right therein, or made on a summary application in an action after judgment. *Third.* When an order grants or refuses, continues or modifies, a provisional remedy; or grants, refuses, dissolves, or refuses to dissolve, an injunction or attachment; when it grants or refuses a new trial; or when it sustains or overrules a demurrer. *Fourth.* An order or judgment of *habeas corpus.*"

Section 8 of the act, providing the manner of taking appeals, is as follows: "An appeal is taken by filing with the clerk of the court in which the judgment or order appealed from is entered or filed, a notice stating the appeal from the same, or some specific part thereof, and serving a copy of the notice of appeal upon the adverse party or his attorney."

Section 9 declares that, "Upon receipt of such notice by the clerk, and proof of service of a copy thereof on the adverse party or his attorney, and the payment or securing of his fees for the transcript hereinafter mentioned, the clerk shall forthwith transmit to the clerk of the supreme court a transcript of the judgment or order appealed from, or so much thereof as is mentioned in the notice; the notice of appeal, and the undertaking in appeal, if any; and so much of the record in the case additional as the appellant in writing may direct. * * * "

Section 23 is as follows: "An appeal shall not stay proceedings on the judgment or order, or any part thereof, unless the appellant shall cause to be executed before the clerk of the court which rendered the judgment or order, by one or more sufficient sureties, to be approved by such

clerk, an undertaking to the effect that they are bound in double the amount named in the judgment or order; that the appellant shall pay to the appellee all costs and damages that shall be adjudged to the appellee on the appeal; and also that the appellant will satisfy and perform the judgment or order appealed from, in case it shall be affirmed, and any judgment or order which the supreme court may render, or order to be rendered by the inferior court, not exceeding in amount or value the original judgment or order, and all rents or damages to property during the pendency of the appeal, out of the possession of which the appellee is kept by reason of the appeal. If the undertaking is intended to stay proceedings on a part only of the judgment or order, it shall be varied so as to secure the part stayed alone. When such undertaking has been approved by the clerk and filed, he shall issue a written order, commanding the appellee and all others to stay proceedings on such judgment or order, or on such part as is superseded, as the case may be. No appeal or stay shall vacate or affect the judgment appealed from. The undertaking shall in no case be for a less sum than $300; provided, that the trial judge may, on showing of either party, fix the amount of the undertaking."

The portions of the statute above quoted we think embrace all the provisions therein which bear upon the questions before us.

Among the radical changes which this statute makes in the practice concerning appeals, it will be observed that no bond is required in taking an appeal unless a stay of the judgment or order appealed from is desired. It is also noticeable that the court or judge has nothing to do in the matter of taking the appeal. Indeed, except in the cases provided for in section 24, where the appellant stands in a fiduciary capacity, or is a municipal corporation, neither the court nor judge has any function to perform in connection with the appeal, unless when the judge may be called upon by either party litigant to fix

the amount of the bond for stay of proceedings. This last provision, we take it, is intended to apply to cases where there is not a money judgment, or where the amount is indefinite, in which case either party may elect to call upon the trial judge to assume the responsibility of fixing the amount of the undertaking.

It was argued by counsel for respondent that this provision that the judge may fix the amount of the bond is to be construed as mandatory in cases where the judgment or order is not for such specific sum as that it may be doubled in the bond; but we are inclined to hold, in view of all the provisions of the statute relating to the taking of the appeal, that the provision in question is directory, and, as we have stated above, permits the parties, or either of them, to elect to call upon the judge for such purpose. Let us see how the law as thus construed would operate. Suppose that, in any case in which this provision is applicable, the appellant chooses to fix the amount of the bond without requesting the judge therefor. If the appellee is dissatisfied therewith, he is at liberty to present a showing to the judge as a reason why the amount of the bond should properly be fixed by such judge. If the appellee takes no steps for such purpose, he may properly be deemed to have no objection, or to have waived objection, to the course pursued by the appellant in the matter. Afterwards, when the appeal has been taken, the appellee has a right, under section 25 of said act, to move, in the appellate court, against the bond, if considered defective or the sureties insufficient. These provisions appear reasonable, and calculated to insure fairness to both parties. On the other hand, if the provision that the judge may fix the amount of the bond were to be construed as mandatory in such cases, and such judge should neglect or refuse to act therein, a difficulty would result which would not be entailed by the other construction we have adopted.

It was strongly contended by counsel for respondent in

argument that the writ of *mandamus* will not lie to compel the clerk to act contrary to the order of the court or judge; that the judge in this case is the real party against which the writ ought to run, for that the clerk is the mere mouth-piece and recording officer of the judge; and High on Mandamus is cited in support of this contention. What is stated by Mr. High in the citation mentioned (section 184) rests upon the cited case of *State v. Engleman*, 45 Mo. 27, where the court below, on an appeal from its judgment, had granted the appeal on condition that no transcript should be made by the clerk until the appellant had filed an appeal bond; and, on petition for *mandamus* to compel the clerk to make out the transcript without filing the bond, the supreme court held that while the order of the court below requiring the appeal bond was unwarranted, yet, as the petitioner had a ready remedy by writ of error, which would have taken up the transcript as soon as the unconditional appeal, the writ of *mandamus* was therefore unnecessary, and was accordingly refused. The case before us is very different. Here the appeal bond in question is for the purpose of operating as a *supersedeas*, and for that purpose is required by the statute. And in this case there was no remedy by writ of error. In reply to this contention of counsel for the respondent, that *mandamus* will not lie to compel the clerk to disobey the order of the court or judge, it was asserted by counsel for petitioner that in this case it is substantially shown by the averments of the petition the court made no order that the judgment or order appealed from is not appealable; and that, therefore, the clerk was not bound by any such order, none having been made. Upon inspection of the transcript filed here in the principal case, we find this statement of counsel to be correct. The order of the court was for the payment of the several sums of money for costs, attorney's fees, and monthly allowances as alimony *pendente lite*. The appeal was taken from this

order, and the bill of exceptions signed by the judge, after reciting the said judgment or order, and the notice of appeal therefrom, further recites, in conclusion, as follows:

"And having filed the notice of said appeal with the clerk of said court, and having served the plaintiff's attorney with a copy thereof, said defendant applied to the said court to fix the amount of the appeal bond to be given; which application the said court refused, and declined to fix the amount of said bond, holding that no appeal would lie from the aforesaid order, or any part thereof; to which ruling of the court the defendant also, by his counsel, then and there excepted," etc.

From which it will be seen that this "ruling" of the court is recited in the bill of exceptions merely as a reason which the judge himself gave for refusing to fix the amount of the bond; and, according to the indorsement of the clerk on the bond, the sole reason for the refusal of the clerk to approve the bond was because he "interpreted" the order of the court in the matter "as declaring the case to be one which does not permit an appeal," and not for any defect or insufficiency of the bond itself.

It is conceded that *mandamus* will lie to compel an officer to act only when it is his plain duty to act in the manner prayed for. The question here, then, to be first considered is, was it the clear duty of the respondent to approve the bond tendered in this case?

The bond being good and sufficient, as is admitted, and not being absolutely required to have the amount therein first fixed by the court or judge, as we hold, and the other prerequisites for taking the appeal having been complied with, under the statute, we think it became and was the clear duty of the respondent to approve and file the bond, and to issue the order for stay thereon accordingly, unless the reason for his refusal given by him, as indorsed on the bond, was a sufficient reason for such refusal. This brings us to consider the question whether the ruling or

opinion of the court or judge respecting the appealability of the order appealed from was such as imposed a duty upon the respondent to refuse the approval of the bond, and also whether the court or judge had authority or discretion to make an order or ruling denying the appeal. We think both these questions must be decided in the negative.

It was urged in argument by counsel for respondent that *mandamus* will not lie to control or interfere with the judgment or discretion of an officer in the performance of an official act, and that in this case, whether it be the act of the court or clerk which is to be affected by the writ, the above principle of the law of *mandamus* is applicable. Aside from the question of its applicability to this case, the soundness of the doctrine thus announced is unquestioned; and it has been so laid down by this court repeatedly heretofore as a first principle in the law governing the issuance of this writ. But whether there was authority for the exercise of discretion by the judge or clerk in this case is the very question before us to determine. Upon full consideration of the statute under which the appeal in question is taken, and viewing all its parts, with respect to the purpose and intent, as a whole, we are constrained to conclude that it is not within the province or authority of the court or trial judge to determine, for the purpose of preventing an appeal, that a given judgment or order rendered or made by such court or judge is not appealable. The statute itself, in the first two sections of the act, declares in what cases appeals will lie to the supreme court, and this enumeration was doubtless intended to furnish a sufficient guide to both bench and bar. A comparison of the manner in which appeals are taken under this new act with the mode prescribed by the former law will serve to throw light on the legislative intent contemplated by the change. The former law (section 415, Code 1883) required the appeal to be *prayed for* within a certain time

after the judgment; it required a *bond*, in a "reasonable sum," to be filed within a time to be fixed *by the court;* it required the bond to be approved by the court or by the clerk when the *order granting* such appeal so directed. Under the present law — the new act — under which the appeal in question was taken, the appellant is not required to pray the court for the appeal; no leave is asked or granted; no bond is required; the statute fixes the amount of the *supersedeas* bond in ordinary cases, and the judge is only authorized to fix such amount when a showing by one of the parties is made for that purpose. In short, to *take an appeal* simply, without a stay of execution, no function or act of the court or judge is required or called into exercise. The appeal is taken solely by the act of the party desiring to appeal, upon his filing a notice thereof with the clerk and serving a copy on the adverse party or his attorney. Therefore, without any authority being conferred by the statute upon the court or judge to pronounce his judgment, exercise his discretion, or perform any office whatever in the matter of taking the appeal, there is certainly no statutory warrant for such court or judge to otherwise interfere by determining or declaring that an appeal will not lie in any given case which the appellant himself, by his counsel, may determine is embraced within the appealable cases enumerated in the statute. If the statute warranted it, we should be pleased to come to a different conclusion upon this point, in view of the business of our supreme court, since the unlimited number of appeals that may now be taken from judgments and orders of the various courts of record opens the doors to a possible abuse, in not only taking appeals for delaying trials and harassing litigants in the trial courts, but also in thrusting upon the supreme court such an increased amount of business as might put it beyond the power of its present number of judges to dispose of without serious delay. It is therefore not without careful consideration that we

have come to the conclusion that the authority to decide
and determine whether an appeal will lie to this court
from a given judgment, decree or order rendered or made
in the trial court is vested solely in the supreme court
when the matter is brought up here for review, and the
question properly raised in this court by motion or other-
wise.   We have not deemed it necessary to refer to the
numerous authorities cited and discussed by counsel on
both sides in the argument upon hearing, for the reason
that they are all either declaratory of or in support of
propositions and principles of the general law of *man-
damus*, of unquestioned soundness, and which may be
admitted by both sides; or are applicable only to the par-
ticular cases cited, and not in point here.

The chief requisites in a petition to warrant the is-
suance of a writ of *mandamus* are — *First*, the petitioner
must show a legal right to have the act done which is
sought by the writ; *second*, it must appear that the act
which is to be enforced by the mandate is that which it
is the plain legal duty of the respondent to perform,
without discretion on his part either to do or to refuse;
*third*, that the writ will be availing as a remedy, and
that the petitioner has no other plain, speedy and ade-
quate remedy.   That the petitioner here has no other such
remedy for the purpose of effecting a stay of the judg-
ment and order appealed from is evident from the nature
of the case and the provisions of the statute relating
thereto.   A writ of error, under our practice acts, will
lie only to review a final judgment in a cause, and will
not lie to an *order* in any case, so that the petitioner was
without this remedy, if that remedy were even adequate
in such a case as this.   The only other remedy suggested
by counsel for respondent, in argument, was a suit to
recover back the money ordered paid, in case the order
therefor should be reversed by the supreme court; but it
is not pretended that this would be a speedy or adequate
remedy.

The absolute right to an appeal is given by the statute in the cases specified therein. The right to a stay of the judgment or order appealed from is a right also given by the same statute; and upon compliance with the conditions prescribed, the right to such stay is as clear and absolute as the right to an appeal. The stay is not restricted by the statute to a particular class of cases within those that are appealable. The statute enacts that an appeal shall not operate to stay proceedings unless a bond is executed by the appellant, and approved and filed by the clerk as provided in section 23 of the act (with the exceptions mentioned in section 24), and it seems a plain inference that whenever such bond is given in any case, a right to such stay is given the appellant by force of the statute,— a right which neither the judge nor clerk has any authority or discretion to deny. When the requisite bond is tendered, the clerk has only the ministerial duty to approve and file it, and thereupon to issue the order staying proceedings. Section 24 declares that when a municipal corporation is appellant, the court or judge *shall* direct a stay of execution after appeal, upon the mere motion of the appellant, without the filing of such bond; and it is certainly fair to conclude that the right to a stay which is thus expressed in mandatory terms by the statute to be given where no bond whatever is required, is no higher or more certain right than is conferred upon an appellant in cases where he is required to give a *supersedeas* bond, as in this case.

I conclude, therefore, upon the facts set out in the petition, (1) that the petitioner had a legal right, under the statute, to a stay of the judgment and order appealed from, and, to effect the same, had a right to have the bond therefor approved by the respondent as the law directs. (2) That the trial court or judge had no authority to prevent the taking of the appeal, nor to adjudge or order that an appeal did not lie. (3) That neither said court nor judge made any order denying the appeal, or

that the same would not lie, and hence there was no judicial interference with the right and duty of the respondent clerk to approve and file the bond tendered. Had such an order been made, a different question would have been presented, and one that we are not now called upon to discuss or decide. (4) That it was not essential to the approval of the bond, or to its efficacy in operating as a stay, that the amount should have first been fixed by said judge. (5) That the action of said judge in refusing to fix the amount of the bond, and his expressed reason for such refusal, furnished no sufficient ground for the respondent to withhold his approval of said bond. (6) That the respondent, as clerk of said court, had no discretion to decline or refuse to approve said bond, and that it was his clear duty to approve the same. (7) That the petitioner has no other plain, speedy and adequate remedy.

The petition being held sufficient, the demurrer thereto is overruled, and the peremptory writ ordered to issue, as prayed. Writ ordered.

HELM, J. (*concurring*). I concur with my Brother STONE in the conclusion that, upon the showing made, the alternative writ in this case should be made peremptory for the following reasons:

1. So far as the trial court is concerned, the statute in question confers the right of appeal upon the unsuccessful party absolutely. As to whether or not a review in this way may take place, that court has no voice whatever. When a party has served upon his adversary, by copy, the requisite notice, and filed the same with the clerk, the appeal is perfected. Nothing then remains to be done by that court or its officers in connection therewith, except for the clerk, upon proof of such service, and tender or payment of fees, to forward the transcript as directed by law.

2. A *supersedeas* is not essential to the appeal or review. It is an incidental and collateral privilege which

appellant may or may not invoke. If the judgment or order from which he has perfected his appeal be for money only, save the discretion with reference to security, and command as to the undertaking embodied in section 24, the court has no voice or authority whatever in connection with the *supersedeas*. Upon tender of a bond for the proper amount, appropriately conditioned, and with sufficient sureties, appellant is entitled, as a matter of right, to have the same approved and filed by the clerk. If the judgment does not mention a sum certain, it may become the duty of the court to fix the amount of the undertaking which appellant shall file. But I cannot believe that when the statute denies the court any voice in determining whether or not the appeal will lie, it was intended that he should be permitted to refuse this request because there might, in his judgment, be no appealable order. To say that he can for this reason decline to fix the amount of the bond would be to admit that while he is powerless to deny the right of appeal and preclude a review, yet he may take from a party all the benefits of such appeal or review, by preventing the issue of a *supersedeas*.

3. Unless I misread or misunderstand the statute, the clerk also has but little, if any, discretion. When a bond is tendered which he admits, as in the case at bar, to be sufficient in every particular, it is his duty to approve and file the same. He cannot be permitted to decline the performance of this ministerial duty simply because, in his judgment, the order appealed from was not appealable. Whether or not an appeal lies in a given case is a judicial question, and if the clerk can decline to approve a bond because he may think the appeal was improperly taken, there is lodged in his hands judicial power. He is enabled to accomplish that which we say the court itself cannot do. He would often prevent appellant's deriving the full benefit of a reversal, when one is secured, by depriving him of the stay of execution sought.

4. I think the clerk should be required to perform his duty, in connection with the *supersedeas*, even though the appeal itself be afterwards dismissed by this court on the ground that there was no appealable⸱ order. For, if the trial court itself cannot pass upon the⸱right of appeal, and if the clerk has no voice in determining that matter, I cannot conceive how it may become an important question upon such applications as the one before us. When the clerk states, as the sole ‘reason for his refusal to approve the bond tendered, that no appeal lies, and upon an application to compel such approval we rest our decision on the correctness of his finding, it seems to me that we thereby clothe him with the very function which the statute denies either to him or the court. The fact that no appeal lies, if such be the fact, does not excuse him from approving the bond. That is a question to be raised in a different way. When the legislature made the appeal so far an absolute right as to deprive the trial court of all discretion in the matter, they intended also to give, in the same manner, the collateral right to a *supersedeas*. It was the purpose of that body to allow, upon tender of a sufficient bond, a stay of proceedings, under the order or judgment, until the appeal itself was here either dismissed or determined upon its merits. In the case at bar, however, it appears that the clerk, instead of acting upon his own judgment, declined to approve the bond because he understood the *court* to be of opinion that no appeal lay. As shown by the record, no judgment or order to this effect was made or entered by the court or judge; but if it had been, still I do not believe the clerk would be justified in his refusal; for, if the court be guilty of a clear usurpation of power,.the order resulting therefrom is illegal and void, and such void order constitutes no justification for the clerk's refusal to perform a plain duty clearly devolved.upon him by law. In such case, if there be no other plain, speedy or adequate remedy for the party aggrieved,

I believe that the performance of the duty ought to be coerced by *mandamus*.

Such is the situation here as to the remedy. The illegal action of the clerk is in no way reviewable. Appellant cannot invoke relief in this court by error. Under the present, as under the former, practice, our writ of error does not issue except to a final judgment; and before proceedings on his appeal could be terminated, the evils appellant sought to avert by *supersedeas* would be suffered. I do not think that the proceeding mentioned in section 31 of the act, or appellant's ultimate right of action for damages against an insolvent and worthless judgment creditor, who has sold appellant's property under execution and placed the proceeds beyond his reach, is such an *adequate* remedy as will debar the proceeding by *mandamus*.

5. Such I believe to be a correct interpretation of the statute in question, according to its letter and spirit. But it seems to me that these conclusions are also supported by strong considerations of public policy. ·If all the trial courts of the state whose proceedings may be brought here for review were at liberty to say that an appeal did or did not lie, there would exist great confusion in practice. Under the law a large number of orders are made appealable. As to whether or not an appeal will lie from a particular order may be a close and perplexing question; consequently the various courts in the state would probably take different views of the same or similar orders; and in one section appeals would be allowed where, in another, they would be denied. This suggestion also applies to the clerks' action in the approval of appeal bonds and allowance of *supersedeas*. One clerk would decline to approve a bond, upon the ground that the appeal was improperly taken; another clerk would hold the appeal warranted, and indorse upon the bond the requisite sanction.

The proposition that there should be but a single tri-

bunal to pass upon this question addresses itself strongly to my mind. I deplore the conclusion, because it must inevitably result in materially increasing the business of this court. A great many appeals will be taken, and a large proportion of our time for several months in the future must be occupied in determining motions to dismiss, based upon the ground that the particular orders were not appealable. But the interest of litigants, as well as the importance of uniformity in practice, demand that the doubt, if a doubt existed, should be resolved in favor of the exclusive jurisdiction of this court in the premises.

As will be observed, I venture no opinion concerning the appealability of the order referred to in this discussion.

No objection is presented to the bond here tendered on account of the sum named therein as a penalty. Such sum appears to be amply sufficient to more than twice cover all possible liability of relator in the premises. I therefore think, with Mr. Justice STONE, that, under the circumstances, the fact of there being no order of court fixing the amount of the undertaking in no way affects the views above expressed. *Sharon v. Sharon*, 8 West Coast Rep. 351.

BECK, C. J. The majority of the bench are of opinion that the demurrer to the petition should be overruled. In this conclusion I concur, but not in the reasoning by which this conclusion is arrived at. My concurrence is based upon a legal proposition of which I entertain no doubt under the present issue, viz., that the order from which this appeal is prosecuted is an appealable order. If it were a non-appealable order, then, in my judgment, the demurrer should be sustained; and I conceive it to be the duty of the court to determine this point before issuing the mandate sought. This is not simply a question of the construction of a statute, but it involves the ap-

plication of an extraordinary remedy. It is my under-
standing of the law that the writ of *mandamus* ought
not to issue unless the following jurisdictional facts be
made to appear: *First,* a clear legal right in the party
praying the writ to have the act performed for which he
seeks the aid of the writ; *second,* a clear legal duty to
act on part of the officer sought to be coerced; *third,*
that the writ, when issued, will be effectual as a remedy.
If this is an appealable order, then all these conditions
exist; otherwise they do not.

Referring to the late statute on the subject of appeals
in civil actions, I find it provides, in the first instance,
from what judgments and orders appeals to this court
may be taken. Neither a party to a judgment nor an
officer of the trial court is authorized by that statute to
take any steps toward perfecting appeals, save in the
cases made appealable by the statute. Should they,
therefore, proceed and perfect appeals in unauthorized
cases, this court would be without jurisdiction to enter-
tain them. No litigant can say he has a right to have
an appeal perfected, unless that right has been conferred
upon him by statute. The statute was enacted for the
benefit and guidance of the people. Like all remedial
statutes, it states the cases to which it applies; and only
those entitled to the benefit of its enactments have a legal
right to take advantage of them. It is illogical to say,
because a litigant who may be entitled to an appeal is
authorized to perform the initiatory steps himself, as the
serving of notice of an appeal, that persons against whom
judgments or orders not appealable are entered may, by
pursuing the same steps, have an appeal to this court.
If such a person should succeed in getting the record of
a cause transferred to this court, he would have here an
illegal proceeding,— one to which he could show no stat-
utory right,— and wholly ineffectual to him as a remedy.
To hold otherwise would be to say that, after restricting
the remedy by appeal within certain defined boundaries,

and after limiting the appellate jurisdiction to cases falling within the limitations prescribed, the legislature then enacted an inconsistent provision which authorized appeals to be taken and perfected in all cases, irrespective alike of the specifications previously made, or of the jurisdiction previously conferred on the appellate court. It would also follow, as a result of such inconsistent provision, that the officers of the trial courts would be bound to assist litigants in perfecting appeals to the supreme court in cases made non-appealable by the statute, and over which this court would not be vested with appellate jurisdiction.

In my judgment such is not a correct interpretation of the statute under consideration. On the contrary, my view is that all its remedial provisions are limited to the cases wherein appeals are provided for, and to no other cases. And if this be true, then whether a judge be called upon to fix the amount of a bond intended to operate as a stay of proceedings, or a clerk be requested to approve a similar bond wherein the amount of the penalty and the sureties therein are both sufficient and satisfactory, if the case be non-appealable, no legal obligation rests upon either officer to perform the act demanded. The statute is their guide. It is also a guide to all who have duties to perform in relation to the subject-matter of appeals, whether those duties be ministerial or judicial. Ministerial officers have no discretion as to their duly-prescribed duties; but the rule goes no further. If a demand be made upon them to perform acts falling outside their duties as prescribed by statute, they are under no obligation to perform them. The books say that such officers cannot be compelled, by *mandamus*, to perform acts not falling within the duties so prescribed. They say *mandamus* is the appropriate remedy to enforce the performance of an official duty clearly enjoined by statute; but, to entitle the relator to the writ as against a public officer, he must show a clear right to the performance of

the thing demanded. An officer whose duties are ministerial is not a machine, but a reasoning being, whose duties are prescribed and limited by law; and while they are denominated ministerial duties, they partake so far of a judicial nature as to require the exercise of his judgment in every instance before he performs or refuses to perform the same. If he refuse to perform, and the duty to *perform* exists, he may be coerced by *mandamus;* but if his judgment be correct in such refusal, and for any reason the supposed duty does not exist, I understand the rule of law to be that he will not be compelled to perform it. Another rule is the familiar one that the writ will not issue where there is another plain, speedy and adequate remedy in the ordinary course of law.

In the application of the foregoing principles to the case before us, the *first* inquiry is: Has the relator a clear legal right to the performance of the act demanded; that is, to have the *supersedeas* bond which he tendered approved? If the right exists it is a statutory right, and necessarily depends upon his right of appeal. Believing, therefore, that the order appealed from falls legitimately within the list of appealable orders, and being substantially a money judgment against him, this inquiry must be resolved affirmatively.

*Second.* Does a clear legal duty exist on the part of the clerk below to approve the bond tendered? It follows from the preceding proposition and answer, from the provisions of the statute, and from the return on the bond, that the predecessor in office of the present respondent erroneously refused to approve the bond.

*Third.* Will the writ, when issued, prove effectual as a remedy? It will effectuate all that is demanded: a stay of proceedings in the district court until the order appealed from can be reviewed in this court. This is a sufficient remedy.

*Fourth.* Is there any other plain, speedy and adequate remedy in the usual course of law? This is the only

question about which I entertain a doubt; but since no other adequate remedy is plainly given by statute, or has been announced by the decisions of this court in like cases, I think the answer should be in the negative upon this application. For the reasons above given the demurrer should be overruled.

                                        *Demurrer overruled.*