## No. 11,135.

### THE STATE EX REL. WM. J. COMERFORD VS. JOHN FITZPATRICK, MAYOR.

The adjudicatee of a contract for the collection of delinquent taxes and licenses of the city of New Orleans, for a specified year, is required to obtain and have prepared by the city notary a notarial contract therefor, conformably to the

State ex rel. Comerford vs. Mayor.

specifications of an ordinance adopted by the City Council in pursuance of a State law. *Held*, that failing to obtain such a contract for presentation to the mayor for his signature he is without legal right to compel him, by *mandamus*, to sign any other.

The writ of *mandamus* never creates any new authority, nor does it confer a power which did not exist before. It does not make duties, but lies to compel a party to do what was his duty without the writ. This writ will not lie unless the act desired is of absolute obligation on the part of the person to be coerced. The relator must show not only a clear legal right *to* have *the thing* done, but also by the person sought to be coerced, in the manner sought, and that he still has it in his power to perform the duty required. The action must not only be in respondent's power to do, but it must be his duty to do it.

A PPEAL from the Civil District Court for the Parish of Orleans.
  *King, J.*

*E, Howard McCaleb* and *Walter D. Denegre* for the Relator and Appellee:

1.  A general denial is not permissible in a return to an alternative writ of mandamus. Merrill on Mandamus, Sec. 274; 68 Tex. 488. The defendant must "state the reason to justify his conduct" in his answer. C. P., Art. 842.

2.  " The writ may issue to the mayor of a city to sign a contract made in pursuance of law and the ordinances of the city." Merrill on Mandamus, Sec. 109; 35 N. J. L. 396; 20 An. 172.

3.  Sections 9 and 20 of the City Charter (act approved June 23, 1882) apply *ex vⁱ terminorum* to ordinances and resolutions, not to simple motions and orders of the council directing the mayor to sign notarial acts evidencing municipal contracts. And such has been the universal custom and practice of city officials. " Usage, under a statute, if ambiguous, is its best interpreter." *Optime legum interpres consuetudo*.

4.  Where the ordinance of the city does not require the completion and signature of the notarial act, and the *giving of bond by a contractor within a fixed time*, and he has never been put in default, he can not be held to have abandoned his contract, especially where he was always ready and willing to comply with its conditions. " The abandonment of a right is never presumed." *Nemo præsumitur donare*.

5.  The decision in 20 An. 518, holding that the mayor could not be compelled to sign a contract revoked by order of General Sheridan, during reconstruction times, furnishes no excuse to the defendant in this case. *Arma silent leges*.

6.  It is the duty of the city notary—not of contractors—to prepare notarial acts in accordance with the city ordinances. His failure or neglect so to do can *not* be visited upon the contractor. Sec. 52 of Act 20 of 1882; Jewell's Digest, Art. 144; Idem, Art. 153.

7.  The court may grant the peremptory writ of mandamus in any form consistent with the case made by the pleadings and embraced within the issues. Merrill on Mandamus, Sec. 296. It may alter, change or modify the alternative writ and give such judgment under the pleadings as is authorized by the evidence. 30 An. 155; 43 An. 590; 34 An. 477; 37 An. 528.

State ex rel. Comerford vs. Mayor.

*Geo. W. Flynn, Hoace L. Dufour*, Assistant City Attorneys, and *E. A. O'Sullivan*, City Attorney, for the Respondent and Appellant:

1. A mandamus will not lie to compel a public officer to perform duties, in the exercise of which he is vested with discretionary powers and functions. N. O. Gas Light Co. vs. Mayor, 32 An 26S; State ex rel. Daboval vs. Police Jury, 39 An. 759; State ex rel. Lanaux vs. Recorder of Mortgages, 36 An. 974; State ex rel. Hope & Co. vs. Board of Liquidation, 42 An. 647.

2. Public officers are presumed to do their duty, and should not be condemned until properly put in default.

3. A failure or neglect on the part of the contractor to comply with the terms of his contract in good faith leaves him without relief by way of mandamus.

4. No ordinance or resolution of the City Council can or should have the force and effect of law unless legally adopted in the manner and form laid down by Secs. 9 and 20 of Act No. 20 of 1882, known as the City Charter.

5. The City Council has not the power to pass a motion changing and altering the conditions of an existing contract.

6. A writ of mandamus will not lie for the enforcement of a money claim.

---

The opinion of the court was delivered by

WATKINS, J.    This is a *mandamus* proceeding, the object of which is to compel the respondent, who is mayor of the city of New Orleans, to sign a notarial act prepared in alleged pursuance of and conformity with city ordinance No. 5425, Council Series, and a certain motion made in and adopted by the City Council on the 24th of April, 1892.

The pertinent averments of the relator's petition are as follows, viz.:

1. That, in pursuance of the provisions of an act of the Legislature defining the powers and duties of the council and officers of the city of New Orleans, and imposing additional limitations thereon, being Act 135 of 1888, and especially in pursuance of Sec. 7 thereof, the right to collect the delinquent taxes of the year 1890 was adjudicated to him as the lowest bidder; and that the *terms* of his bid were duly accepted and ratified by the mayor and council of the city of New Orleans under ordinance No. 5425, Council Series, adopted July 7, 1891, and which ordinance was duly promulgated according to law.

2. That from the time of adjudication to him of the right to collect said delinquent city taxes, he has, at all times, been ready and willing to carry out and execute the terms and stipulations thereof in good faith.

3. That, by the terms of said ordinance, accepting his bid, the

respondent, mayor, was authorized and instructed to enter into a notarial contract with him; but that he has without any just or sufficient cause neglected and refused so to do.

4. That, on the 12th of April, 1892, a motion was made and adopted by the City Council instructing the respondent to sign the contract with him, which had been duly prepared and copies thereof had been laid upon the desks of the members of the City Council, in accordance with city ordinance No. 1175, Council Series, and which contained the names of the sureties, who were duly approved by the council; but, nevertheless, the mayor still refuses to sign the contract with relator without any just or sufficient cause and still continues to persist in his refusal, although repeatedly requested to execute the said contract by affixing his signature to the said notarial act evidencing same, notwithstanding it has been duly signed by him and his sureties in the manner and within the time required.

5. That in order to prevent a denial of justice to him, and considering that the law has assigned no remedy by the ordinary means for redressing the wrong and injury he complains of, he alleges himself to be entitled to relief by *mandamus*.

The principal objections argued by the respondent are the following, substantially: that the duty imposed upon him in the premises, in respect to affixing his signature to relator's contract is not purely and simply ministerial, but one involving the exercise of judgment and discretion, which is not subject to judicial control; that a simple *motion* on the part of the City Council, not embodied in an ordinance or resolution, instructing the mayor to sign relator's contract, has not the force of law, and is violative of the city charter; that relator did not comply with the obligations of his contract requiring him to furnish bond within a reasonable time, and according to the specifications of the ordinance, and has, on that account, virtually abandoned his contract; that the written contract submitted to the City Council on the 12th of April, 1892, contained provisions changing the terms and conditions of the original contract, so as to render it *ultra vires* and null and void; that the result of granting relator the relief sought would be to give a money judgment in his favor, which can not be done by *mandamus*.

The provisions of the law relied upon by the relator are " that at the end of each and every year    *    *    the council shall, by proper ordinance and under proper limitations and instructions, farm

out and adjudicate the contract to collect the delinquent taxes and licenses of that year, to the lowest bidder, after at least ten days' public advertisement, *provided* that the percentage allowed such farmer shall never exceed 5 per centum on the amount collected and paid into the treasury; that the payment of such taxes and licenses shall always be made to the city treasurer and not to the farmer; that the city shall be at no expense or cost of said collection; that each farmer shall be required to close his contract within two years, and that his bond shall not be canceled until he accounts for every tax bill in his hands, either by collecting the same or by showing that the same can not be collected, and the reason of such non-collectibility; and on all licenses and bills uncollected at the end of said two years he shall receive no commissions." Sec. 7, Act 135 of 1888.

On the 28th of April, 1891, Ordinance No. 5276, Council Series, was adopted by the City Council, and it was approved and signed by the mayor on the following day. The title of this ordinance is "An ordinance to authorize the farming out of delinquent city taxes for the year 1890;" and it ordains and directs that the comptroller be and is thereby authorized and directed to advertise for a period of ten days for sealed proposals for the collection of delinquent taxes and licenses for the year 1890, in accordance with the quoted provisions of the Act of 1888.

The requirements of the ordinance are that the person bidding shall be experienced and understand the collection of delinquent taxes and licenses to the satisfaction of the council or the committee thereof to whom the matter is referred. That he shall be a responsible party and shall have no direct or indirect connection with any public office created by law. That in proof of the earnestness of his offer he shall accompany his bid with a certified check in the sum of $50,000, " said amount to be forfeited in case the party whose bid has been accepted *does not sign the contract and furnish bond as provided in this ordinance.*" That all bids shall be considered unfavorably unless accompanied by name or names of sureties who will agree to sign his bond for $50,000 for the faithful performance of the obligations of his contract; and it is made the duty of the contractor to execute a bond for the sum of $50,000 in favor of the city of New Orleans for that purpose, " it being understood and agreed that the *said contract shall not extend over a period of two years from*

18

*the date of signing*    *    *    and at the end of which time he shall give a full and final report of the taxes collected," etc.

In pursuance of said ordinance, a sale and adjudication of the contract for the collection of delinquent taxes and licenses for the year 1890 was made by the city comptroller to the relator on the 15th of June, 1891; and on the 7th of July, 1891, the City Council enacted and adopted Ordinance No. 5425, C. S., in which it is declared "that the bid of W. J. Comerford for the collection of delinquent taxes and licenses of the year 1890, for and in consideration of 3¾ per cent., under Ordinance No. 5266, C. S., be and the same is hereby accepted, and the *mayor is hereby authorized and directed to enter into notarial contract* with the said W. J. Comerford as per his bid, and under the specifications of Ordinance No. 5266, C. S."

That ordinance was duly approved and signed by the mayor on the 9th of July, 1891.

No further proceedings appear to have been taken by the relator until the 12th of April, 1892, when a motion was made in the City Council directing the respondent to sign *the* contract that was tendered by the relator for the collection of delinquent taxes for the year 1890; and same was adopted by a majority vote, and a copy thereof forwarded to the mayor, but it was not signed by him.

The prayer of relator's petition is "that a writ of mandamus issue herein, directed to the Hon. John Fitzpatrick, mayor    *    *    * commanding and ordering him, in his said official capacity as mayor of said city, *to sign the notarial act* prepared by Joseph D. Taylor, city notary of the city of New Orleans, under and by virtue of said Ordinance No. 5425, Council Series, and the motion adopted by the council on April 12, instructing the mayor to sign said act," etc.

On the state of facts thus presented, the question raised for decision is, whether it was the *plain ministerial* duty of the respondent, mayor, to affix his official signature to the act presented to him in April, 1892?

To be more specific, and put the respondent's objections to signing the act in question more plainly and specifically, we will extract the following from the brief of plaintiff's counsel, viz.:

" Fourth. Respondent further avers that relator neglected to comply with one of the essential conditions of this contract, to-wit: the furnishing of a bond within reasonable time; that although his bid was accepted on July 7, 1891, as per Ordinance No. 5425, Council

Series, no bond as required by the specifications contained in Ordinance 5266 was furnished by him, nor presented to the council for approval until 1892, seven months after the passage of the ordinance, and that this delay on the relator's part was a virtual abandonment of his rights under the contract.

"Fifth. Respondent further avers that the notarial act submitted to the council April 12, 1892, contained provisions changing the terms and conditions of the original contract, retroactive in their operation, and as such null and void, and *ultra vires* for the following, to-wit:

"That Act No. 135 of 1888, Section 7, provides for the farming out and adjudication of the contract to collect the delinquent taxes and licenses of each year, and it is further provided that the farmer shall close his contract within two years.

"That although Ordinance No. 5425, Council Series, was adopted on July 7, 1891, authorizing the mayor to enter into a notarial contract with the relator, no bond was tendered by him subsequent to April 23, 1892, and no notarial contract, in accordance with the specifications and conditions imposed by Ordinance 5266, was ever tendered to or accepted by the council, but *that the only contract tendered in April, 1892, was one dated as beginning on July 27, 1891, becoming operative from that day, and to continue for two years, and was, therefore, in conflict with Ordinance 5266,* ' *which provides that the contract shall begin from the date it is signed,' and that respondent is under no obligations to sign the same for the reasons aforesaid.*"

An examination of the notarial act tendered—the one respondent is mandamused to sign—discloses that it contains this clause, to-wit: "This contract is to date from the acceptance of the bid, July 7, 1891, and *to continue for a period of two (2) years from said date.*"

It also appears from said act that the comptroller made the adjudication of the franchise to the relator on the 15th of June, 1891, and that the City Council accepted and approved said adjudication on the 7th of July, 1891; but its approval was specially conditioned on the terms and conditions stipulated in the prior ordinance, No. 5266, C. S., which provides the manner in which the legislative grant was to be carried into effect; and that amongst other things, that ordinance declares that the farmer's " contract shall not extend over a period of *two years from the date of signing.*"

Obviously, the contract tendered for the signature of respondent

does not conform to Ordinance No. 5266, nor to Ordinance No. 5425, in respect to the date from which the adjudication to the relator was to take effect. And conceding for the argument that the City Council was authorized *by simple motion* to approve the contract, no motion to that effect was made until the 12th of April, 1892, more than eight months having elapsed; and the motion made at that time was for the approval of the contract as taking effect from the 7th of July, 1891, instead of from date of signing.

It is evident that the contract that was approved by the council is not such as the ordinance contemplates, nor such as the approval of the council of date July 7, 1891, required, even if it be conceded to be perfectly formal and regular, which is more than doubtful. In our opinion the contract, as presented, is illegal, and violative of the ordinances 5266 and 5425, and that the mayor was not bound to approve or sign the same.

The condition upon which the council accepted relator's bid was that his contract should conform to the specifications of Ordinance No. 5266, and one of those specifications is that it shall take date on the day it is signed, while the purport of the motion of April 12, 1892, was that the mayor should approve and sign an act taking date eight months previously—the two acts of the council being diametrically opposed to each other.

Not only so, but the express direction and requirement of Ordinance No. 5425 is, that the adjudication to the relator is accepted in pursuance of the terms of Ordinance No. 5266, as above stated, and the mayor " was *authorized and directed to enter into notarial contract with* the said W. J. Comerford, as per his bid and under the specifications of said ordinance," and no other.

In view of that declaration and authority it was not only not the duty of the mayor to sign the act that was tendered to him for his signature, but had he signed the act in its then condition he would have undoubtedly exceeded his authority, and should we grant the relator the relief prayed for our judgment would compel his performance of a thing that is wholly unwarranted by the ordinance and the law.

Nor is this a mere technical construction of the ordinance and contract, for the proof shows that during the interval of time which elapsed between the 7th of July, 1891, and the 12th of April, 1892, a sufficient amount of delinquent taxes and licenses were collected

on the rolls of 1890, by *other persons than the relator*, to make the commissions thereon aggregate, at the contract price of adjudication, the sum of $3705.37, to which the relator would be entitled, if he is awarded the relief prayed for, and to that extent our decree would give him, in effect, a money judgment, to which he is not entitled under the ordinance and law.

Recognizing this fact the district judge undertook the reformation of the contract, and in so doing, employed this statement in his reasons for judgment, viz. :

"This contract was erroneous by [being] dated as beginning on July 7, 1891, and, if signed, would have given relator the right to recover his commissions on all taxes of 1890 paid to the city on and since that date, amounting to $3705.07, and to which he is not entitled. The mayor very properly refused to sign the contract. It was and is the duty of the city notary to prepare the contract in accordance with the ordinance under which the sale and adjudication were made, and when so prepared and signed by the sureties *it is* the ministerial duty of the mayor to sign the contract."

Thereupon the judge made the mandamus peremptory, commanding the respondent " to sign within five days from the date of judgment a notarial contract *to be prepared*   *   *   *   to take effect from the date of signing said notarial act," and compelling the respondent to pay the cost of suit.

Such a judgment not only appears to be clearly illogical, but one that is unwarranted upon its face.

For while it concedes that the contract tendered for signature was erroneous, and if signed would have given the relator over $3000 in excess of his legal right; and while conceding that the respondent properly refused to sign it in that condition, yet it makes the writ peremptory at his cost, and grants a relief not prayed for or contemplated by relator, by commanding the respondent to execute and sign an act *not yet executed or in esse*.

Not only so, but the act which the judgment appealed from declares erroneous is the only one that has ever been presented to or approved by the City Council, and such presentation to and approval by the council are among the *sine qua nons* of the ordinances and the law. The sureties who are to sign this *new* act are not indicated, and same, of course, have not been procured or approved by the council.

The only course that is left open to the relator is to conform strictly to the letter of the ordinance and law, and obtain a notarial contract in strict conformity to the terms and specifications of the ordinance, as the only sure means of obtaining relief.

For it is not the province of the writ of *mandamus to create a new remedy*.

In a very recent treatise on the subject we find the following, viz.:

" The writ of *mandamus* never creates any *new* authority, nor does it confer a power which did not exist before. It does not make duties, but lies to compel a party to do what was his duty without the writ." Merrill on Mandamus, Sec. 50, p. 54.

" This writ will not lie unless the act desired is of absolute obligation on the part of the person sought to be coerced. The relator must show not only a clear legal right to have the thing done, but also by the person sought to be coerced, in the manner sought, and that he still has it in his power to perform the duty required. The action must not only be in the respondent's power to do, but it must be his duty to do it. The act must be clearly prescribed and enjoined by law. The duty must be plain and positive." Ibid., Sec. 57, pp. 64 and 65; Runion vs. Latimer, 6 S. C. 126; Railroad Co. vs. Sufferin, 129 Ill. 274; State vs. St. Louis, etc., 21 Mo. 526; State vs. Omaha, 14 Neb. 265; People vs. Klokke, 92 Ill. 134; Heighways vs. People, 99 Ill. 587; State vs. Jacobus, 2 Dutch. 135; People vs. Spruance, 8 Colo. 307; Daniels vs. Miller, 8 Colo. 542; Aspen vs. Aspen, 10 Colo. 191; People vs. Hoyt, 66 N. Y. 606; Burnsville vs. State, 119 Ind. 382; State vs. Bonnell, 119 Ind. 494; State Board vs. West Point, 50 Miss. 638; State vs. Hastings, 10 Wis. 518; Commonwealth vs. Mitchell, 82 Penn. St. 343; People vs. Chenango Co., 11 N. Y. 563; Town vs. Talapoosa Co., 17 Ala. 527; Bayard vs. United States, 127 U. S. 246; see also State ex rel. New Orleans Pacific R. R. vs. Nicholls, 30 An. 1217.

It is our conclusion that the judgment appealed from is erroneous, and must be reversed, and it is therefore ordered and decreed that the judgment appealed from be annulled and reversed, and it is further ordered and decreed that the relators demands be rejected, and that a peremptory *mandamus* be refused at his cost in both courts.