No. 8991.

MULNIX, AUDITOR v. CITY AND COUNTY OF DENVER.

1. MANDAMUS—*When Allowed.* The relator must show a clear, legal right in himself, and a plain legal duty resting upon the respondent.

2. LUNATICS—*Expenditures by County for the support of Insane Persons* are not provided for by Rev. Stat. sec. 4150.

*Error to Denver District Court, Hon. George W. Allen, Judge.*

Hon. LESLIE E. HUBBARD, Attorney General, Mr. FRANCIS E. BOUCK, Mr. JOHN L. SCHWEIGERT, Deputy and Assistant Attorneys General, for plaintiff in error.

Mr. JAMES A. MARSH, and Mr. THOMAS H. GIBSON, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

This is an action in mandamus to compel the Auditor of State, to audit and allow certain claims of the city and county of Denver, against the State, for the keeping and care of certain persons theretofore adjudged insane, in the aggregate sum of $35,418, and to draw and issue warrants upon the treasury of the State, payable out of the insane fund in said treasury, in payment of said accounts, and each of them, and to deliver said warrants to the relator. The alterative writ was made permanent, and that judgment of the court is before us for review.

We may assume for the purposes of this case, but which we do not decide, that such claims when established are valid as against the State, but if so they are made so by section 4135 Revised Statutes 1908.

The writ shows the city to have properly complied with the procedure provided by said section. The only question to be considered is whether or not the State has properly provided an appropriation for the payment of the claims sued on, so as to justify the Auditor of State in issuing his warrants in payment thereof.

Section 33, Art V, of the constitution provides:

"No money shall be paid out of the treasury except upon appropriations made by law, and on warrant drawn by the proper officer in pursuance thereof."

This action was determined upon a demurrer to the writ. This court has declared the chief requisite to warrant the issuance of a writ of mandamus:

"First, the petitioner must show a legal right to have the act done which is sought by the writ; second, it must appear that the act which is to be enforced by the mandate is that which it is the plain legal duty of the respondent to perform, without discretion on his part either to do or to refuse; third, that the writ will be availing as a remedy, and that petitioner has no other plain, speedy and adequate remedy." *Daniels v. Miller,* 8 Colo. 542, 9 Pac. 18.

Included among the grounds of the demurrer was:

"That there is no valid and existing appropriation of the State of Colorado and no funds upon which a warrant of respondent could be legally and lawfully drawn in payment of the said claims and demands set out in the said alternative writ or any or either thereof."

· The only allegation contained in the writ concerning an appropriation by the legislature from which it is contended that such claims may be paid is the following:

"That on the said 4th day of September, 1915, at the time of the presenting of said several accounts as aforesaid, there was, in the insane fund in the treasury of the State of Colorado then and there existing (being that certain fund established and maintained by the fractional mill levy provided for in section 4150 of the Revised Statutes of Colorado, 1908), money equal to the aggregate sum of said accounts, and all of them."

The levy referred to is a continuing appropriation made by the act of the legislative laws 1879, entitled "An Act to establish the Colorado Insane Asylum, and providing for its location."

Section 6 of the Act, now sec. 4150 Rev. Stat. 1908, provides:

"There shall be levied and assessed upon all taxable property in the state, real and personal, for the creation and support of such asylum as herein provided, a tax of one-fifth (1-5) of a mill on each and every dollar, to be known as the insane tax; such revenue to be assessed and collected in like manner with other revenues of the state."

This appropriation was for a specific purpose, "the creation and support of such asylum as provided herein." The accounts of the county in this case can in no sense be said to be included in such specific purpose. They are neither for the creation nor support of the asylum. They are clearly for services rendered by the county, in the case of insane persons committed to, but never admitted to the asylum, and before the enactment of the initiated statute of 1917, requiring the Board of Corrections to admit to the asylum, or provide care elsewhere, for all persons who may be committed to the asylum. These accounts cannot be construed to be within an appropriation for the creation and support of the asylum under the law as existing at the time they were incurred.

The large sum of money claimed by the city and county of Denver alone may of itself be sufficient, if used to pay these claims, to so cripple the operation of the asylum as to greatly interfere with the proper care of its inmates. We cannot assume that the legislature contemplated that the fund to be raised by the levy should be used for the payment of claims neither determined nor presented and not specifically designated by the appropriation itself.

No other appropriation for the payment of these claims is alleged, and we cannot assume that there was such.

It was said in *Nance v. The People,* 25 Colo. 252, 54 Pac. 631:

"The court cannot indulge in any presumption in favor of the relator; on the contrary, it will be presumed that state officials perform their duties according to law, and this presumption obtains until the contrary is shown, and in actions of this character the relator must, by clear statements, make it appear that he has a legal right to the relief asked. This he has failed to do in this case."

The question is one for the legislature and until such time as it may make a specific appropriation for the purpose, the auditor of state is without authority to act.

The judgment is reversed with directions to quash the writ and dismiss the proceeding.

Garrigues and Bailey, J. J., concur.