THE STATE *ex rel.* S. D. CARPENTER *vs.* SAMUEL D. HASTINGS, State Treasurer.

APPLICATION FOR MANDAMUS.

Heard January 17, 1860.]　　　　　　　[Decided February 21, 1860.

*Construction of Statutes—Secretary of State—Bank Comptroller—Mandamus.*

Where the law clothes an officer with discretionary powers, he must exercise the power upon his own responsibility; but the duty of interpreting the constitution and laws devolves on the court and not on the officer.

If an officer act without authority, it is the duty of the court to declare the action illegal; and it is not bound by the interpretation which the officer may have given to the law.

State ex rel. Carpenter vs. Hastings, Treasurer, &c.

If the Secretary of State allow a claim, which may in law be a proper claim, the court will not examine into it; but if he allows a claim against the law, his decison is not final.

The Bank Comptroller has authority to order such printing as is necessary or convenient for the use of his department, but not such as is not so authorized.

Whether certain printing, ordered by the Bank Comptroller, was authorized by law. *Quere.* The question may be both of fact and law depending on each case.

The law does not seem to authorize the Bank Comptroller to make use of bank statements, or impose upon him any duty in the performance of which they might have been used.

A motion to quash an alternative writ of mandamus will be granted unless the relation show a clear right to the writ.

Where the relation for a mandamus leaves the right of the relator in doubt, and the writ is quashed for that reason, leave will be given to amend.

On the 22d of November, 1859, S. D. Carpenter filed in the supreme court a relation against Samuel D. Hastings, the treasurer of the state, avering that one James Ross was the contractor to do the public printing; that on the 19th of July, 1859, the Bank Comptroller ordered from Ross, for the use of his office, 125 quires of blanks of the statement of the condition of the banks of the state, on medium paper, printed on both sides; (the order is set forth at length); that Ross printed and furnished the blanks under his contract to do the public printing. On the 15th of September, 1859, Ross presented his account for printing the blanks, to the Secretary of State, who audited and allowed the account at the sum of $7,501, and certified the same to the defendant, the Treasurer, for his payment; that the account so audited has been assigned to Carpenter; that on the 14th of November, 1859, he had notified the treasurer of the assignment, and demanded payment of the audited claim ; which he refused to do.

On the tenth of December, 1859, the then attorney general, Gabriel Bouck, moved to quash the alternative writ of mandamus, which had been issued, and assigned the following causes :

" 1. The Bank Comptroller had no authority, at the cost of the state, to order, or procure the printing by the said Ross, of the statements of the condition of the banks, or blanks, in said writ named, or any part thereof, or to contract in any manner for the printing of the same, or any part thereof so as to bind the state.

" 2. That the said Bank Comptroller had no authority to

520        WISCONSIN REPORTS.          [1860

State ex rel. Carpenter vs. Hastings, Treasurer, &c. '

order, request, or cause to be done, at the cost of the state, any of the said printing named and referred to in the said writ and petition, or any part thereof, or to contract in any way for the printing of the same so as to bind the state.

" 3. That the said printing of the said blanks, or statement of the condition of the banks, in the said writ mentioned, having been ordered by the Bank Comptroller without any authority of law, the state was not legally bound to pay for the same, and therefore the Secretary of State was not authorized by law to audit the said Ross' account therefor, and to make said order; and the said auditing and said order are illegal and void, and the State Treasurer was justified in refusing to pay the same."

*G. B. Smith* and *S. D. Carpenter*, for the relator.

1. The Secretary of State is auditor *ex officio.* Const., Art. VII., § 2. And the law prescribes his duties. He is to examine and settle accounts of all persons, &c., and certify the amount or balance to the treasurer. Rev. Stat., chap. 10, § 27.

There is no discretion given to the Treasurer anywhere in the law to refuse to pay warrants drawn by the Secretary of State as auditor; but on the asking he is required by law to pay all sums certified by the Secretary of State, Rev. Stat. chap. 10, § 40, in the order in which they are presented; id. The Treasurer is not the auditor, nor has he any of the powers of an auditor, either by the constitution or the law.

1. This work was done under a contract created by law. Laws of 1858, chap. 114.

The State Treasurer, whose duties are prescribed by law, is positively required and directed to pay these printing accounts, when the Secretary of State draws his order for that purpose. The law is positive and peremptory, and the contract plain and explicit; leaving no discretion whatever with the Treasurer, but to pay on the order of the Secretary of State.

The Secretary of State is appointed by the constitution, and is, by the printing law and the contract, the sole officer to adjust and settle such accounts, and the Treasurer is not vested with any discretion or authority to question such settlement.

The Bank Comptroller is the chief officer of the department,

and he is invested with authority and power to order the printing for his department, and the treasurer has no legal right to question the propriety of his orders for printing, and to do so is a piece of official meddling on his part, not justified by the case or the circumstance, even if he were invested with such extraordinary power. But it cannot be conceded or admitted for a moment that the state treasurer has a legal, or any right whatever to act as auditor or adjuster of accounts for the state. His duty is plainly pointed by the law. And the judgment and decision of this court, it is respectfully submitted, should be such, and in such style, as will forever hereafter prevent the like official meddling on the part of this officer, or any other who shall succeed him. With his construction of the law, and his duties respecting accounts audited, every creditor would be directly at the mercy of the treasurer. Such was not the intention, and such is not the law.

By the banking law the Bank Comptroller is especially directed to have certain bank statements published in a newspaper, but he is not restricted to that printing. He may order under the authority above cited, whatever, in his opinion, he may think necessary and proper for his department, and he is to decide and order, and the printer *must obey* the order and do the printing.

*By the Court,* PAINE, J. This was an application for a *mandamus* to compel the treasurer to pay an account for printing which had been audited and allowed by the Secretary of State. The Attorney General, on behalf of the Treasurer, filed a motion to quash the alternative writ, upon the ground that it appears from the relation that the account was not a legal claim against the state.

The facts set forth are that the Bank Comptroller ordered the printing of twenty-five quires of the statement of the condition of the banks for the use of that department; that they were printed accordingly, and the account for them, which is the one in question, was properly audited and presented for payment, and payment refused.

The whole matter turns upon the question whether the

State ex rel. Carpenter vs. Hastings, Treasurer, &c.

Bank Comptroller had lawful authority to order this printing done. In section 12, chap. 6, revised statutes of 1858,95, it is provided that " the printing of the several departments shall be subject to the order of the respective officers thereof," and further, " no order shall be given for any work not absolutely required for the use and convenience of such office, and in quantities within the actual requirements of the department making use of the same."

It was contended by the counsel for the relator, that the law vests in the officers of the several departments, a discretion to decide what printing shall be ordered for their departments respectively, and that it was an unwarrantable interference with that discretion, for this court to inquire into the propriety of its exercise, or to attempt in any manner to control it. The argument may be good when applied to the action of those officers within the limits of the authority confided to them by law, and certainly it is not necessary for us to disclaim any desire or intention to interfere with their action within those limits. Where the law clothes them with a discretionary power, they must exercise it upon their own responsibility; but it will not be denied, that upon this court, and not upon any other officer or department of the state, is devolved the duty of interpreting its constitution and laws. And we have no doubt, that whenever the question is properly brought before us in a judicial proceeding, and it is made to appear that any officer has acted without authority, it is our duty to declare such action illegal. And in determining it, we are not bound by the interpretation which such officer, or any other officer, may have put on the law declaring his powers. If we were, then he would constitute the highest judicial tribunal with respect to such laws, and this court would be divested of that character.

If the Secretary of State audits and allows a claim which in law may be a proper claim against the state, then, whether

he allows too much or too little, his action cannot be reviewed here; but if he allows a claim which is against law, although he may have held it to be legal, we do not think his decision as its legality is final; for, although he must decide it in the first instance for himself, yet he is not vested with the power to decide authoritatively upon questions of law; but that power, however imperfectly it may be exercised, is devolved upon the judicial department. *Commonwealth vs. Fowler*, 10 Mass., 305. There can be no doubt, that under the provisions before referred to, the Bank Comptroller had authority to order whatever printing was necessary or convenient for the use of that department. But it must be necessary or convenient in the discharge of some duty required by law. The law has prescribed definitely what his duties are, and whatever printing may be necessary or convenient in performing them, he is authorized to order. But he is not clothed with any power of legislation with respect to the interests of that department. He cannot assume any new duties not authorized, and thereby vest himself with the power to order whatever printing might be convenient or necessary in their discharge.

The question in this case, therefore, is, whether the statements of the condition of the banks, which were ordered printed, were necessary or proper in the discharge of any duty required by law of the Comptroller. We have had some difficulty in determining whether this is a question of law, or of fact, or of both. What the duties of the department are, is matter of law. Those duties being ascertained, whether certain printing was necessary or convenient in their discharge, might involve an inquiry into facts. Though it is somewhat difficult to see how it could be presented as an issue of fact to a jury, without involving a decision by them as so what the duties of the department were, which is matter of law.

In *Barker vs. Mechanics' Ins. Co.*, 3 Wend., 94, the action

was on a note given by an insurance company, and it was objected on demurrer, that the company had no authority to give notes. But the court said it might give notes for office rents, payment of officers, agents, &c., and therefore they could not on demurrer, hold it void. They seemed to consider it necessary to be able to point out some purpose for which the company might lawfully give a note, in order to answer the demurrer. And we have had considerable doubt whether, in accordance with the same principle, we should not be able, in answer to this motion, to say, as a matter of law, that there is some duty required of the Bank Comptroller, in discharging which these statements might be used. If it were to be so considered and held entirely a question of law, we should be unable to point out any such duty. For, after carefully examining the several statutes having reference to the subject we can find no law requiring or authorizing the Comptroller to make any use of such statements, or imposing upon him any duty in the performance of which they might be used. And none such was suggested upon the argument.

Without, however determining the precise character of the question, we think the motion to quash must be sustained upon the ground that it devolves upon the relator to show a clear right to the writ before it is awarded. And having set forth the character of the work ordered, even though we might not be able to say that it could not be used in performing any duty of that department, yet we are certainly unable to see, or say that it could be so used. And if it could not, then it was ordered without authority, and there is no law appropriating money for its payment.

The relator has therefore at least left his right in doubt, and the motion must be sustained, with leave to amend if it is desired.