The State of Georgia *vs.* The Southwestern Railroad.

---

THE STATE OF GEORGIA *vs.* THE SOUTHWESTERN RAILROAD.

[This case was argued at the last term, and the decision reserved.]

1. A mistake in a settlement of a suit pending in court, before it be entered on record and made the judgment of the court, is always open to investigation and correction, and if it vitiate the settlement as a whole, it should not be made the judgm ent of the court at all.
2. The attorney-general has not authority of himself to settle tax executions at less than their full amount; such authority must come from the state in order to bind it.

Practice in the Superior Court. Contracts. Officers. Attorney and client. Before Judge CLARK. Fulton Superior Court. March Term, 1880.

Reported in the decision.

CLIFFORD ANDERSON, attorney-general; R. TOOMBS, for plaintiff in error.

R. F. LYON; A. R. LAWTON, for defendant.

JACKSON, Chief Justice.

The question made in this record arose on two tax executions issued, the one for 1874 and the other for 1875, for taxes alleged to be due for those years from the Southwestern Railroad Company to the state. All issues of law and fact were submitted to the judge without the intervention of a jury—the two cases, by consent, being tried together. He decided against the state, and the state excepted.

The facts are that the state, during the pendency of the causes in the superior court of Fulton county, where by law they were cognizable, moved to open what purported to be a settlement of the two executions by the attorney-general, by petition addressed to the court in the following language, in substance : That on the 7th of February, 1877, there were pending in that court these two causes on affidavits of illegality, one of which was carried to the supreme court of the United. States, and the judgment of the supreme court of this state was reversed by that of the United States, and the cause remanded for a new hearing. Before this new trial the attorney-general of this state entered on each of said executions these words: "The within *fi. fa.* to be settled on payment of costs. February 7th, 1877. Robert N. Ely, attorney-general." The attorney-general also executed at the same time a receipt of which the following is a copy, after stating the two cases :

"Received of the Southwestern Railroad Company four thousand dollars, in full settlement of the above *fi. fas,* on which oaths of illegality are pending in Fulton superior court. The payment is by N. J. Hammond, and he may have said cases entered settled upon payment of costs. 7th February, 1877."

The petition alleged further that this sum of four thousand dollars was for taxes alone for that part of defendant's road from Americus to Albany, and insisted that the state was entitled to proceed, notwithstanding the entries on the executions, on three grounds:

1. Because the attorney-general had no authority to bind the state to accept less than the whole sum named in the executions.

2. That the settlement was agreed to on a mistake of law and fact, on the assumption that the defendant was not indebted in any other sum than that paid; whereas, in truth and fact, said company is indebted for taxes for those years in much larger sums; and

3. Because no settlement has been yet made by the court and entered on its minutes.

The defendant demurred to this petition. The court sustained it, and repelled all evidence to open the alleged settlement, holding that the state had no *status* in court because both *fi. fas.* had discharged their offices, and no longer by their virtue can they be used to enforce the collection of taxes, and to this judgment the state excepts.

The court was right to repel all testimony under the petition if it was right to sustain the demurrer; for nothing was left on which to bring evidence before the court.

Was the court right in sustaining the demurrer? Clearly not, we think. No settlement of the case had been consummated in court, and the petition may be regarded as objection to such consummation and entering the same of record. The state seems to have anticipated the defendant in a motion it would probably have made to enter the cases settled under the agreement, and to have alleged reasons why said entry ought not to be permitted and the settlement be thus perfected and completed by the judgment of the court. The act of 1874—pamphlet Acts of 1874, p. 107—gives the court full power to determine all questions arising on these affidavits of illegality, and pending the actions in the court a question vital to the whole issue has arisen, to-wit, whether or not the parties have settled, and certain entries are made on the executions which indicate that a settlement has been made. These executions must be put in testimony by the state, and on them appear entries which would seem to estop her, at least to require explanation.

Why may she not give the explanation at once, remove the impediment to a full hearing out of her path and correct an agreement to settle a pending case, if illegal, before its consummation by adoption and ratification by the court? And why may not the court having jurisdiction, special jurisdiction over the whole matter vested in it by special act of the general assembly, investigate the proposed settlement before entered of record, and stop it where it finds it, if it be against law, or if on the facts

made in the petition, which the demurrer admits to be true, the settlement ought not to be consummated because made under mistake? We are at a loss to see any good, legal reason why this may not be done.

All settlements of pending cases are subject to be inquired into before entered on the minutes; and even after such entry before adjournment for the term. All courts of record hold their minutes subject to amendment and correction after they are made up, and before they are made up and signed, of course they may refuse to allow any improper or illegal judgment of any sort to be placed on those minutes; so that before this improper and illegal settlement—if it be so—was entered on the minutes, the court had the authority, and in our judgment it was its duty, when the settlement was disputed as valid by one of the parties to it, to look into all the facts and pronounce it valid or invalid, as those facts might make it.

Without regard to the legal power of the attorney-general to bind the state in this settlement, that officer puts this motion on another ground, and that is that as the agent of the state in this controversy, he was laboring under a mistake, in that he was under the impression that this sum covered all the legal taxes due by this company, whereas in truth and fact it only embraced that due on the part of the road from Americus to Albany. Conceding that he had full authority to settle and bind the state by settlement, if he acted under mistake, he would not be so bound himself individually, nor would his principal be bound so that the fetters could not be thrown off, at least before they were soldered by the cement of a judgment of court.

But the plaintiff in error rests her case also on want of authority in the attorney-general to settle for less than the amount of the executions. There can be no doubt that unless authority to settle was given him by the state, he could not bind her. See, cited by plaintiff in error, 7

Cranch, 366 ; 7 Wallace, 666 ; 20 Md., 1 ; 10 Wis., 518 ; 52 Mo., 578 ; 2 Nott & Hun., 144 ; 5 *Ib.*, 71 ; 1 *Ib.*, 270 ; 12 Iowa, 142.

This court has passed substantially on the same question, and applied the principle to the action of the agents of the state generally. Indeed, all agents of all sorts must act within the scope of their authority to bind the principal.

Our Code does not even permit any attorney to bind his client by settlement for less than the full sum claimed, unless express authority be given by the client. Code, 409. It would seem strange, therefore, that the state should be bound by her attorneys without her express authority, when none of her people would be by theirs.

It has not been shown to us that any statute of the state has conferred such authority on the attorney-general. When the case of the Southwestern Railroad Company and the state on a bill for injunction was before us at the February term, 1880, in an effort to lay down landmarks by which that case could be settled without further litigation, this court said that as to an agreement by the attorney-general to take a stipulated sum for other years for that part of the road between Americus and Albany, it thought the agreement binding, but we were cautious, also, to say that all these intimations or opinions were not given as settling the law absolutely, even in that case, but were subject to reconsideration and review before the court on the final hearing of that cause.

We were then impressed that the statutes of the state gave the authority, but, looking at the opinion, no citation of particular acts is given, and we fail to find them now.

No mistake or error of any sort in that settlement appeared, and no reason was given in that case why it should not stand. Hence only a very cursory investigation of the point was made.

Whether, however, he had or had not the authority to

settle, conferred by statute, is immaterial here; at least, unnecessary to uphold the judgment we pronounce.

A mistake in a settlement of a suit pending in court, before it is entered of record and made the judgment of the court, always opens it to investigation, and before it is entered it may be corrected; and if it vitiate the settlement as a whole, it should not be made the judgment of the court at all. On this ground alone our judgment may rest, and if that base be strong enough to sustain it, that of the court below must fall.

Judgment reversed.