BENNETT, superintendent of banks, *v.* BENNETT *et al.*

The principles ruled in the case of *Bentley* v. *State Board of Medical Examiners*, 152 *Ga.* 836 (111 S. E. 379), and in the cases there cited, are applicable to the issue made by the general demurrer to the petition; and consequently the court did not err in sustaining the general demurrer and dismissing the case.

No. 4973. FEBRUARY 26, 1926.

Equitable petition. Before Judge Reed. Ware superior court. May 30, 1925.

T. R. Bennett, as superintendent of banks of Georgia, filed his petition in the superior court of Ware County against John D. Bennett et al., alleging, in substance, that the defendants are engaged in carrying on a small loan business in Ware County; that they come within the purview, are bound by and subject to the act of the General Assembly approved August 17, 1920, regulating the loan business; that they have failed to comply with the provisions of said act, but on the contrary are operating in violation thereof; that the duty of enforcing this law devolves upon plaintiff as superintendent of banks, as aforesaid; in that while defendants claim to be engaged solely in the purchase of earned salaries, etc., yet they are chiefly engaged in loaning money to salary and wage earners, and taking as security therefor pretended assignments or bills of sale for salaries and wages earned, which are renewed with the customer on each semi-monthly pay-day, each time exacting and extorting from ten to

---

Pawnbrokers 30 Cyc. p. 1165, n. 4.

twenty per cent. of the principal amount for the use of same each two weeks, under the guise and claim that each transaction is a new, distinct, and original undertaking for the purchase of a new portion of the borrower's earned salary or wages, when in fact the same is a mere renewal of the original loan by the payment of the exorbitant interest and the signing of a new paper as security therefor; that all of said alleged sales and assignments are part of a mere scheme, contrivance, or device of defendants to evade and violate the act hereinbefore mentioned, and a cloak and cover for the collection of usury. The plaintiff further alleges (paragraph 24) that defendants are engaged chiefly in lending money to laborers employed by the Atlantic Coast Line Railroad Company at Waycross,· Georgia, which company employs more than one thousand men, a large number of whom have become involved with defendants through the illegal conduct of their business in the manner aforesaid, and who are unable to release themselves because of their inability to pay defendants the interest at the rate charged and reduce the principal obligation; but are forced to continue their payments of such interest in order to prevent defendants from harassing them and filing notices with their employer to stop their wages, said wage earners being entirely dependent upon their semi-monthly pay, and unable to be deprived of it while attempting to litigate their claims with defendants; that all of this vitally affects a large class of citizens of the State, which are intended to be protected by said act of 1920, and likewise it affects the economic condition of said State and of its citizens, and presents a situation requiring, upon behalf of a class of its citizens not otherwise in position to assert its rights, the interposition and exercise, through a court of equity, of the police power of the State; that the greater percentage of persons doing business with defendants are ignorant, and do not comprehend the character of the transaction resulting from defendants' scheme of operation; and that defendants thereby intend to and do deceive and defraud said customers by extorting from them enormous sums as usury, and intentionally and openly carrying on such business in flagrant violation and disregard of the statute of the State of Georgia enacted to protect its citizens from such schemes or contrivances of fraud.

The petition further alleges that the assets of the defendants are in the main liquid in nature, and easily convertible into cash, and can be easily dissipated or removed beyond the jurisdiction of the court; that the pretended assignments taken by the defendants from persons to whom they have furnished money are void; that every payment of usurious charges exacted by defendants for the use of money is void; and that all the money so illegally paid is the property of defendants' customers. The prayers are, that defendants be enjoined from doing any of the acts or things complained of in the petition, from doing or causing to be done any of the acts or things prohibited by the act of August 17, 1920, without first complying with the terms of said act, from engaging further in the business of loaning money and taking as security therefor any assignment or sale of wages or salary, from taking any action in court or otherwise to collect any bill of sale or assignment held by them; and from removing, alienating, or encumbering their assets; that a receiver be appointed to take charge of their assets and records; that their assets be declared a trust fund for the benefit of customers who may have illegally paid money into such fund; for the recovery of such amount as have been so illegally paid; that plaintiff have judgment for $400, the license fee fixed by said act, for the years 1922 to 1925, inclusive.

The defendants filed demurrers, general and special. The court below sustained the general demurrer and dismissed the case, and the petitioner excepted.

*C. N. Davie, Luther Roberts, F. R. Youngblood,* and *Wilson, Bennetl & Pedrick,* for plaintiff.

*R. R. Jackson* and *Blalock & Blalock,* for defendants.

BECK, P. J. (After stating the foregoing facts.) The right and authority of plaintiff to bring this petition and maintain this suit must be found, if at all, in the act entitled, "An act to license and regulate the business of making loans in sums of $300, or less," etc., approved August 17, 1920 (Georgia Laws 1920, p. 215). After a careful consideration of this act, we find no provision giving to the plaintiff the power necessary to the maintenance of this action seeking the relief prayed. Conceding for the sake of argument that the plaintiff has the power vested in the State bank examiner, under the terms of the act, then the

plaintiff is made the "licensing official" from whom persons desiring to engage in the business of making loans of money to the value of $300 or less, under the conditions imposed in the act, shall obtain a license, and with whom such person shall file the bond prescribed. And he is given the right and power to investigate the loans and businesses of any licensee or of any person making such loans; and he may, after notice to the licensee and reasonable opportunity to be heard, revoke such license, if the licensee has violated the provisions of the act; and where the licensee has been convicted by a court the second time of a violation of the section of the act which relates to the amount of loans and interest, etc., the licensing official must revoke the license. Sections 10 and 11 of the act relate to the duties of the licensing official in regard to making investigations and keeping records. The sections of the act indicated and specified sum up and include all the powers conferred upon the plaintiff under the terms of the act, and to that act he must look for the power which he may exercise; for it is the source and only source of his power to enforce the provisions of this enactment in regard to the regulation of the loan business contemplated by the statute under consideration. The other sections of the act contain certain provisions in detail for the regulation of the loan business, and prescribe the penalties attached to violations of certain sections of the act, which render the party violating them subject to punishment as for a misdemeanor. In no clause of the act is power given to file and maintain a petition in equity like that brought in this case.

Nor is the power to maintain this action to be implied from anything in the act. While the facts appearing in the record in the case of *Bentley* v. *State Board of Examiners,* 152 *Ga.* 836 (supra), differ in many respects from the facts in this case, the issues and questions arising under those facts are quite similar to those presented by the record in this case; and the decision in that case is applicable here and sustains the trial court in dismissing this case upon general demurrer. In that case the State Board of Medical Examiners brought its petition against one Bentley, alleging that the defendant was engaged in the practice of medicine and surgery in Murray County, Georgia, contrary to law and without having complied with the provi-

sions of the law authorizing such practice. The petition alleged in detail the specific reasons why the defendant's being engaged in the practice of medicine and surgery was contrary to law. It further alleged that the defendant had obtained a fraudulent diploma from a school of medicine; that he had obtained a fraudulent license to practice medicine in the State of Georgia; that he had never been licensed by a medical board to practice, was not a graduate of any school of medicine, etc., and stated more fully in detail than appears from the above recital the grounds for the allegation that the defendant was practicing medicine and surgery contrary to law. The petition prayed for an injunction to restrain the defendant from practicing medicine and surgery, and that his license and diploma be declared null and void, and that they be cancelled and expunged from the records. The defendant demurred to the complaint, on the ground that there was no equity therein; that the State Board of Medical Examiners as such had no right to prosecute this complaint; that the complaint charged defendant with a criminal offense, of which a court of equity would not take cognizance, neither aiding nor restraining criminal courts in the exercise of their jurisdiction; and that complainants had an adequate and complete remedy at law. The court sustained the demurrer to so much of the petition as prayed for injunctive relief, and overruled the same as the remainder of the petition. The defendant assigned error on this judgment. In deciding questions raised by the assignment of error this court held that the Board of Medical Examiners was an administrative body, and had only such power as the legislature had expressly or by necessary implication conferred upon it; and cited cases sustaining that proposition. This court held that the act of the legislature creating that board (Georgia Laws 1913, p. 101), as amended by the act of August 20, 1918 (Georgia Laws 1918, p. 173), did not expressly confer this power upon the board, and that it was not conferred by necessary implication from the terms of the act; the court being of the opinion that such power was not reasonably necessary to execute the express powers conferred upon the board by the act, and therefore could not be implied. It was insisted in that case by counsel for defendant in error that this language, "to protect the people from illegal and unqualified practitioners

of medicine and surgery," which is found in the caption of the act, is an express grant of authority to file the suit. In deciding the case Mr. Justice Hines pointed out that the language quoted appeared only in the caption of the act and of the amendment thereto, and that the preamble or title of an act is not a part thereof, though it might be considered as one of the aids in its construction when the body of the act is ambiguous. But the court said further, that, if the above language found in the caption of the act were contained in the body, the proper construction thereof would not confer the power claimed by the plaintiff; that "the methods of protecting the people of this State from illegal and unqualified practitioners of medicine and surgery are fully outlined and defined in the acts." After pointing out that by a specified section of the act of August 20, 1918, the board had the power to cause a licentiate's name to be removed from the record in the office of any court in this State, when fraud or deception is used in applying for the license or in passing the examination provided for in said act, and for other reasons mentioned in this section, it was said that the board had express authority to have a licentiate's name removed from the records; and as this power conferred by the statute afforded a specific remedy for expunging the name of a physician from the records in the office of any clerk of court in this State, the power to proceed in equity for the same purpose would not be implied; and then was added this distinct ruling: "It is made a crime for any person to practice medicine in this State without possessing in full force and virtue a valid license to practice under the laws of this State; and such person so practicing is declared to be guilty of a misdemeanor, and upon conviction of such offense he shall be punished for a misdemeanor, in accordance with section 1065 of the Penal Code of this State. Thus the statutes creating this board fully prescribe the means and methods of protecting the people of this State against illegal and unqualified practitioners of medicine and surgery; and when such means and methods are prescribed for such protection, they must be followed by this board. The board can not resort to any other methods of protecting the people of this State. Certainly no other power of protection will be inferred from the acts creating this board." And so we may say of the act regulating the loan

business, that the statute confers specific remedies and means for protecting the people of this State against illegal loans made by persons without a license, as provided by the terms of the act of August 17, 1920.

In the case of *Dean* v. *State,* 151 *Ga.* 371 (106 S. E. 792), it was said: "A court of equity will not enjoin the commission of crime generally; but it has jurisdiction, and will in a proper case, at the instance of the State, restrain an existing or threatened public nuisance, though the offender is amenable to the criminal laws of the State." There is no ground for holding that the acts against which an injunction is sought in this case amounted to a public nuisance; and if they were, the petitioner here is not the party to bring the suit for injunction. Section 1 of the act regulating the loan business relates to the rate of interest. Section 2 relates to the application for license, how it shall be made, what shall be stated in it, and the fee to be paid. Sections 3, 4, and 5 relate to the bond to be given by the applicant, the issuance of the license, and additional bond in certain cases. Section 7 prescribes that the license shall be posted. Sections 8, 9, and 11 relate to the place of business, and the records and books to be kept by the licensee. Sections 13 and 14 deal with the amount of loan, the interest, and statements concerning the loans to be made by the licensee, and receipts to be given by him. Section 15 puts certain limitations upon the licensee and his powers. Sections 16 and 17 relate to salary assignments and maximum interest charges, and provide that certain loans shall not be enforced. Section 19 exempts from the operation of the act any person, copartnership, or corporation doing business under any law of this State or of the United States relating to banks, trust companies, building and loan associations, or licensed pawnbrokers. In none of the sections referred to is there a sentence or a line from which any authority to bring a suit like this could be inferred or implied, or that gives color to the claim that the licensing official could maintain a suit for injunction. And there are only three other sections of the act to which we have not referred; those are sections 6, 10, and 18. Section 6 reads as follows: "The licensing official may, upon notice to the licensee and reasonable opportunity to be heard, revoke such license if the licensee has vio-

lated any provision of this act; and in case the licensee shall be convicted by a court the second time of a violation of section 13 of this act, the licensing official shall revoke such license. Provided, that the second offense shall have occurred after a prior conviction, in which case another license shall not be issued to such licensee, nor to the husband or wife of the licensee, nor to any copartnership or corporation of which he is an officer or member." And section 10 is as follows: "The licensing official, for the purpose of discovering violations of this act, may either personally or by any person designated by him, at any time, and as often as he may desire, investigate the loans and business of every licensee and of every person, copartnership, and corporation by whom or which any such loan shall be made, whether such person, copartnership, or corporation shall act, or claim to act, as principal, agent or broker, or under or without the authority of this act, and for that purpose he shall have free access to the office or place of business, books, papers, records, safes, and vaults of all such persons, copartnerships, and corporations; he shall also have authority to examine under oath all persons whomsoever whose testimony he may require, relative to such loans or business." Sections 6 and 10 do confer certain powers and authority upon the licensing official, but they do not confer the power to maintain a suit in equity for injunction or for injunction and receiver. As was said of an administrative, body whose powers the court was discussing in the case of *Bentley* v. *State Board,* supra, "such a body has such implied powers only as are reasonably necessary to execute the express powers conferred." · Is authority to file a suit for injunction in any way essential to execute any of the express powers conferred in the act regulating the loan business? Sections 6 and 10 refer to certain powers of the licensing official. From which one of those grants of power can it be inferred that the licensing official may maintain a suit for injunction or injunction and receiver? Is such a suit necessary to the exercise of the power by that official in the revocation of the license? Certainly not, under the ruling in the case of *Bentley* v. *State Board,* supra.

Is the right to maintain a suit for injunction or for injunction and receiver necessary to the exercise by the licensing official of his power to investigate loans and the business of a licensee?

Or can the maintenance of such a suit be essential to the exercise by the licensing official of his authority "to examine under oath all persons whomsoever whose testimony he may require, relative to such loans or business"? If the authority 'to bring this suit is not essential to the exercise of the power thus specifically mentioned in sections 6 and 10 of the act, what other powers conferred by the act even squint at authority to maintain a suit for injunction or for injunction and receiver, or would give even colorable authority to a court of equity to entertain such a suit?

But it may be inquired, if the licensing official can not maintain this suit, how is that class of persons who make applications for and obtain loans under ·the terms of this act to be protected against the rapacity of those who violate this law and who would charge interest at a rate in excess of that fixed in the statute? The answer to that question is apparent; for section 18 provides that any person, copartnership, or corporation, who shall violate any of the provisions of sections 1, 8, 12, 13, or 17 of the act, shall be guilty of a misdemeanor, and upon conviction shall be punished by fine or by imprisonment, or by fine and imprisonment, in the discretion of the court. And the Justice delivering the opinion in the case of *Bentley* v. *State Board,* supra, referring to the section of the act under which the board was created and from which it derives its powers, and to the part of the statute which makes it a crime for any person to practice medicine without possessing a valid license to practice under the laws of this State, and which renders such person punishable as for a misdemeanor in accordance with section 1065 of the Penal Code, said: "Thus [that is, by the penal section of the act] the statutes creating this board fully prescribe the means and methods of protecting the people of this State against illegal and unqualified practitioners of medicine and surgery; and when such means and methods are prescribed for such protection, they must be followed by this board." And this was followed by the distinct ruling that the board could not resort to any other method of protecting the people of the State, and that no other power of protection could be inferred from the acts creating the board. If the authority to be exercised and the duties to be performed by the licensing official referred to in the act regulating the loan business had been vested in two

or more persons, instead of in one, they would be appropriately referred to as an administrative body, and the official upon whom the administrative duties are conferred by the act under construction in this decision is an administrative official, and all that was said in the *Bentley* case in regard to the powers of an administrative board to file and maintain a suit in equity is necessarily applicable to the official called the licensing official in the act of August 17, 1920. He has no higher or broader powers than any administrative board would have had, had such been created in the place of the sole administrative official created by this act.

Hence we conclude that the court properly dismissed this suit upon general demurrer.

*Judgment affirmed. All the Justice concur, except*

RUSSELL, C. J., dissenting. Under the statement of facts in this case I can not concur in the judgment of the majority. In 1920 the General Assembly passed an act to regulate the business of loaning money in sums of $300 or less. Acts 1920, p. 215. The caption is: "An act to license and regulate the business of making loans in sums of $300 or less, secured or unsecured, at a greater rate of interest than eight (8) per centum per annum, prescribing the rate of interest and charge therefor, and penalties for the violation thereof; regulating the assignment of wages or salaries, earned or to be earned, when taken as security for any such loan, and for other purposes." Section 13 of this act legalizes loans of sums of money under $300 at a rate not to exceed three and one-half per cent. per month. Sections 16 and 20 of the act refer especially to salary assignments. Not only in the caption but throughout the entire act assignments of salaries or wages are treated, inferentially at least, as loans; and certainly, unless the provisions of the act referred to are complied with and obeyed, great miseries would result to a large class of our population, by reason of these so-called salary assignments. The petition alleges facts which show that the most exorbitant interest is extorted under the guise of salary purchases, and that the form of the contract is only a cover for usury. Usury is contrary to the public policy of this State. The State bank examiner is a public official of this State; and

under section 1 of the act of 1920 no one can lend money or charge or contract or receive a greater rate of interest than eight per cent. per annum, without first obtaining a license from the State bank examiner, called the "licensing official." By section 3 of the same act it is provided that any person desiring to lend money at a rate higher than eight per cent. per annum shall not only obtain a license, but he must give bond in the sum of $1000, with security to be approved by the licensing official, payable to the State of Georgia, and conditioned that the obligor will conform to and abide every provision of the act. Section 5 provides that if at any time the bond shall appear to be insecure or doubtful, the obligor must within ten days give an additional bond of not more than $1000. The licensing official, by the terms of section 6 of the act, has power to revoke these licenses. By the provisions of section 10 the licensing official is given full supervision of the business of any person, firm, or corporation who under any guise, device, or contrivance whatever, is lending money in excess of eight per cent. per annum, with the right, either personally or by any person designated by him, at any time and as often as he may desire, to investigate the loans and business of such person, whether a licensee or not, with "free access to the office or place of business, books, papers, records, safes, and vaults of all such persons, copartnerships, and corporations; he shall also have authority to examine under oath all persons whomsoever whose testimony he may require, relative to such loans or business." As I construe the act of 1920, to the State bank examiner is delegated the power of the State, as its express agent, to do whatever may be necessary to enforce the provisions of the act. To view it in any other light, the State is entirely impotent to check or prevent the evils at which the act is aimed, and the passage of the act becomes useless.

What is the object of the act? To establish a lawful rate of interest for loans made to a large class of people who may not otherwise be able to borrow money in time of necessity, on account of the great hazard involved in the collection of the debt, and yet to protect this unfortunate class of borrowers from the extortion of even much higher rates. The lenders who are legalized and licensed are required to pay $100 per annum as a license tax, and to give bond of $1000, and the fees are used to

cover the expense of the State's supervision and superintendence in order that the public might be protected. Certainly the State did not intend that merely by adopting one particular form of loan, that is, the usual form of extortion known as salary assignments, to free this lender from all licenses, turn him loose upon the public without bond and without any supervision. The fact that regulation of the assignment of wages and salaries is included both in the caption and in the act indicates the intention of the General Assembly upon that point. If an assignment of wages can in any case be assumed to be a mere cover for a higher rate of interest than that prescribed by law, then the provisions of section 1 of the act require that such lender can not do business in this State without having first obtained the license prescribed. In my judgment there can be but one opinion as to the purpose of the General Assembly in the passage of the act of 1920, supra. By this act the State declared that any person who might lend money at a higher rate of interest than eight per cent. per annum should be placed under surveillance and investigation, and that the State in any event would see to it that no person should charge more than three and one half per centum per month for the use of money, no matter what might be the form of the contract. I can not agree that this case is in anywise similar in principle to *Bentley* v. *State Board of Medical Examiners,* 152 *Ga.* 836 (supra). There the court correctly held that the State Board of Medical Examiners could not enjoin Bentley from illegally practicing medicine, or cancel his medical diploma upon the ground that it was a forgery, because not only was the power to file a suit for this purpose not expressly conferred, but that such power was not reasonably necessary to execute the express powers conferred upon the medical board. In that case counsel for the plaintiff argued that the words "to protect the people from illegal and unqualified practitioners of medicine and surgery" were an express grant of authority to file the suit; but, as said by this court, "The above language appears only in the caption of the above-recited acts," and the court held that this implication of authority was negatived by the terms of the act, because the board "shall possess and exercise only the powers prescribed and conferred upon it therein." Furthermore, we held in *Bentley's* case, that as section 14 of the

act of August 20, 1918, conferred a specific remedy for expunging the name of a physician from the records in the office of any clerk of court in this State, the power to proceed in equity for the same purpose was excluded. "This section manifests the legislative intent to give to the board a specific remedy in such case, and thus to exclude any other remedy. The method of procedure provided by this section is exclusive." Furthermore, in *Bentley's* case it was pointed out that to practice medicine without a license is a misdemeanor, and that this prescribed another means of protecting the people of the State from illegal and unqualified practitioners of medicine. As to the case at bar, it is true that there is a provision in section 18 of the act of 1920 prescribing punishment as for a misdemeanor against lenders licensed and bonded and authorized to charge three and one half per cent. per month; but there is no provision affixing a criminal penalty against a lender who may use the device of a purported assignment of wages, though he may charge twenty per cent. per month, and not take out or pay for any license.

It is my opinion that it is one of the duties of the banking department of the State to proceed by any appropriate civil remedy to enforce the act of 1920, not only for the reason that the issuance of licenses at a cost of $100 per year is a great injustice to those who are licensed unless their business is protected from unfair competition on the part of those who neither pay licenses nor give bonds, but it is far more important that the wise purpose of the General Assembly in the passage of the act be made effective in the only way, so far as I can see, that it can be made effective. In *Bentley's* case, supra, there was an effort on the part of the board of medical examiners to cancel the license of a physician in equity, when the board already had specific power and a specific means by which the same result could be accomplished; and this court very properly held that the specific remedy provided by law must be used, because equity never has jurisdiction where there is a plain legal remedy. In the case at bar the same rule applied in the *Bentley* case would be applicable if a case were presented in which the State banking authorities were attempting to deal with one of the lenders licensed under the provisions of the act of 1920, supra. But such is not the case in the record now before us. The State

superintendent of banks is not attempting to take the license from any licensed lender; he is not seeking, as to licensed lenders, to enforce any of the provisions of the act of 1920. The case at bar presents an instance which is the converse of the proposition presented in the *Bentley* case, supra. The superintendent of banks is asking a court of equity to deal with the practices of the defendants named, as a part of an illegal and corrupt system which is an intolerable nuisance because it works hurt, injury, and damage to innumerable members of the public. Against this situation there is no remedy at law of which I am aware. Certainly there is none in the act of 1920, supra, and in this respect it differs altogether from the act creating the board of medical examiners referred to in the *Bentley* case. Even the criminal procedure provided in the act governing loans of $300 or less (Acts 1920, p. 215) refers only to those who may obtain licenses and qualify under the provisions of the act. If in fact equity is designed to provide relief where the law by reason of its universality is deficient, then it seems to me that the State superintendent of banks properly asked for equitable relief, and that it was error to decline to afford that relief in an intolerable situation merely because a specific remedy had not been provided. Our Code provides that for every wrong there is a remedy, and that if there be none the court shall mould a judgment which will afford appropriate relief. Even if there was a penal statute denouncing usury as a crime, under the facts stated in the petition of the superintendent of banks equity would interfere. *Dean* v. *State,* 151 *Ga.* 371 (supra).