STATE OF GEORGIA, *ex rel.* BOYKIN, solicitor-general, *v.* BALL INVESTMENT COMPANY *et al.*

No. 13504. DECEMBER 5, 1940. REHEARING DENIED DECEMBER 14, 17, 1940.

*John A. Boykin,* solicitor-general, *James A. Branch, Thomas B. Branch Jr., J. C. Savage, Lokey & Bowden, Ellis G. Arnall,* attorney-general, *E. J. Clower,* assistant attorney-general, and *Asa W. Candler,* for plaintiff. *Joseph A. Padway,* for persons at interest.

*Hewlett & Dennis, Noah J. Stone, T. F. Bowden,* and *John F. Echols,* for defendants.

GRICE, Justice. ■ It is in the first place insisted that this is a suit in equity, brought by the State in its sovereign capacity, to suppress and prevent the commission of repeated wrongs inimical to the general welfare, and that the facts alleged and proved demanded that the court grant redress on that theory. The plaintiff relies on In re Debs, 158 U. S. 564 (15 Sup. Ct. 900, 39 L. ed. 1092) ; *Trust Company of Georgia* v. *State,* 109 *Ga.* 736 (35 S. E. 323, 48 L. R. A. 520) ; People *v.* Tool, 35 Colo. 225, 86 Pac. 224, 6 L. R. A. (N. S.) 822, 117 Am. St. R. 198) ; State *v.* Pacific Express Co., 80 Neb. 823 (115 N. W. 619, 18 L. R. A. (N. S.) 664) ; McCarter *v.* Firemen's Ins. Co., 74 N. J. Eq. 372 (73 Atl. 80, 29 L. R. A. (N. S.) 1194, 135 Am. St. R. 708, 18 Ann. Cas. 1048). The complainant in the instant case is designated as "State of Georgia ex rel. John A. Boykin." In *Hart* v. *Atlanta Terminal Co.,* 128 *Ga.* 754 (58 S. E. 452), it was held that the suit was substantially one by the State. It was instituted by virtue of an executive order directing that such a suit be brought. The case of *Walker ex rel. Mason* v. *Georgia Railway & Power Co.,* 146 *Ga.* 655 (92 S. E. 57), was likewise held an action in the name of the State. The judgment refusing to grant an injunction was affirmed. After reviewing the various duties and powers conferred

on the attorney-general by the constitution and statutes of this State, this court said: "The duties and powers of the attorney-general of this State are limited by the provisions of the constitution and statutes above quoted. This holding is no new pronouncement of the law controlling the question involved, but is a mere reiteration of the well-settled legal principle recognized in various decisions of the courts of last resort in this country, which are to the effect that where the constitution creates an office and prescribes the duties of the holder thereof, and declares that other duties may be imposed on him by statute, he has no authority to perform any act not legitimately within the scope of such statutory and constitutional provisions. Therefore nothing more is necessary than the citation of some of such cases. The Floyd Acceptances, 7 Wall. 666 (19 L. ed. 169); *State of Georgia* v. *Southwestern R. Co.,* 66 *Ga.* 403, 406; *Western Union Telegraph Co.* v. *W. & A. R. Co.,* 142 *Ga.* 532 (83 S. E. 135); State *v.* Bank, etc., of Missouri, 45 Mo. 528, 540. In view of the foregoing, the attorney-general of this State was without authority to institute an equitable action in the name of the State, on the relation of a number of designated individuals, against a domestic corporation, to enjoin it from doing acts alleged to be ultra vires." In that case the suit was not brought by the express direction of the Governor.

In denying the right of the members of the State Board of Health to bring a petition for injunction against the members of the local board of health of the City of Atlanta, it was said, in *Woodward* v. *Westmoreland,* 124 *Ga.* 529, 531 (52 S. E. 810, 4 Ann. Cas. 472): "The constitution declares that the Governor shall take care that the laws be faithfully executed; and although there is no express statutory provision which in terms authorizes the Governor to cause suits to be instituted in the name of the State in matters relating to the public health, under the general powers conferred by the constitution upon the Governor, and on account of his peculiar relation to the affairs of the State, he has the power to authorize the attorney-general to bring a suit in behalf of the State, either at law or in equity, whenever the interests of the public or of the State would be subserved by an appeal to the courts. It may be that the attorney-general himself, without express authority from the Governor, could bring a suit of this character in the name of the State." In re Debs, supra, it is to be gathered

from the statement preceding the opinion that the complainant was "the United States by Thomas E. Milchrist, district attorney for the Northern District of Illinois, under the direction of Richard Olney, Attorney-General." In *Trust Company of Ga.* v. *State,* supra, the petition was filed by the attorney-general in the name of the State, in accordance with an executive order from the Governor. In *Walker ex rel. Mason* v. *Ga. Ry. & Power Co.,* supra, a petition for injunction was refused by the trial court. In the instant case there was no demurrer. In the *Walker* case there was. This court held that, as the law then stood, the judge was without jurisdiction to dismiss the action, presumably on demurrer, before the appearance term, but affirmed the denial of injunction on the ground that the attorney-general of the State was without authority to institute an equitable action in the name of the State; and this ruling was made without any decision as to whether a case was made for injunction at the instance of the State. Following the reasoning in that case, we hold that the judge did not err in refusing the relief prayed for, so far as it was predicated on the idea that it presented a case by the State to suppress and prevent the commission of repeated wrongs inimical to the general welfare. A judgment denying an application for injunction will be affirmed when it appears that there was lack of capacity in the plaintiff to bring the suit, although there was no demurrer on that ground. In such a case there is no cause of action in the plaintiff. Hamilton *v.* McIndoo, 81 Minn. 324 (84 N. W. 118) ; Hinton on Code Pleading (3d ed.), 287. There is no law authorizing the solicitor-general, by virtue alone of his office, to bring such a suit. The foregoing ruling renders it inappropriate for us to discuss further In re Debs, supra, *Trust Co. of Ga.* v. *State,* supra, and other cases relied on, with a view of determining whether or not on their merits they may be distinguished on principle from the instant case. Whether such an action based on the allegations of the petition before us could have been legally brought by the attorney-general by express direction of the Governor is a question not involved in this case.

■ This brings us to the second question. There is authority authorizing a suit, with proper and sufficient allegations, to proceed for the public on information filed by the solicitor-general of the circuit, to have a public nuisance enjoined. Code, § 72-202.

In so far as this is a suit in equity for that purpose, it is properly brought. Whether it can be successfully maintained as such depends on certain factors presently to be mentioned. In order for the petition to proceed, the object which it is sought to enjoin must be a public nuisance. A public nuisance is one which damages all persons who come within the sphere of its operation. though it may vary in its effects on individuals. Code, § 72-102. We shall decide this case upon the assumption that the alleged nuisance, if it exists at all, is of a public character within the meaning of § 72-202, which permits a suit to enjoin it to be filed by the solicitor-general. We take no issue with the proposition, that, although a nuisance exists in a city under the government of a mayor or common council, a court of equity will in a proper case take jurisdiction of a suit to enjoin its continuance, notwithstanding the provisions of the Code § 72-401, when the nuisance is a continuing one. *Town of Rentz* v. *Roach,* 154 *Ga.* 491 (5) (115 S. E. 94), and cit; *Spencer* v. *Tumlin,* 155 *Ga.* 341 (116 S. E. 600). We concede that in a proper case equity will enjoin an existing nuisance, although the acts to be enjoined constitute crimes. *Edison* v. *Ramsey,* 146 *Ga.* 767 (92 S. E. 513); *Rose Theatre Inc.* v. *Lilly,* 185 *Ga.* 53 (193 S. E. 866). The fact that in the commission of the illegal acts no disorderly conduct is indulged does not prevent such acts from constituting a public nuisance. *Gullatt* v. *Collins,* 169 *Ga.* 538, 541 (150 S. E. 825). Due recognition of these principles, however, still leaves unanswered the major question, whether or not plaintiff has alleged a state of facts which amounts in law to a public nuisance. Our Code, § 72-101, declares: "A nuisance is anything that works hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary reasonable man." This was not intended to change the common-law definition of a nuisance. *Hill* v. *McBurney Oil & Fertilizer Co.,* 112 *Ga.* 788, 793 (38 S. E. 42). In common parlance the word nuisance is a broad term. In law it has a restricted meaning. It is customary to refer to many things unpleasant, unsightly, irritating, obnoxious, as nuisances. In a restricted sense, a person may sometimes become a nuisance. A

classic example of this is recorded by Horace in his ninth satire. He tells of going along the Via Sacra one day in deep meditation, and describes his sufferings from the loquacity of an impertinent fellow, who, although a chance acquaintance, nevertheless insisted on asking the poet many foolish and personal questions. Horace in describing this experience repeated what was told him when a child by an old sorceress, that a babbler would one day destroy him, adding that it seemed to him that day had come. He had met with a nuisance undoubtedly, but not such an one as the law could enjoin or abate.

For the proposition that the practices carried on in the manner described in the petition constitute a public nuisance, counsel rely on State ex rel. Smith *v.* McMahon, 128 Kan. 777 (280 Pac. 906, 66 A. L. R. 1072). That was a case on its facts quite similar to the case at bar, and it does support the contention of counsel, unless that case should be valueless as persuasive authority, for two reasons: first, in Kansas usury is not a crime, and so far as it appears none of the acts alleged against the defendant were; second, the Kansas court in an earlier case had in effect held that the repeated and persistent violation of a statute constitutes a nuisance, and any place where such repeated violations take place is a public nuisance. The McMahon case, however, has not escaped criticism. In 43 Harvard Law Review, 499, 500, referring to its findings it was said: "The distortion of the injunction into a weapon of the criminal law can be of no ultimate salutary effect. Furthermore, the propriety of such summary action as was ordered here on the basis of a statute which merely imposes a penalty in civil actions is especially questionable. Only a conception of the injunction as a nostrum for social evils unnoticed by a negligent legislature can justify the result." In 14 Minnesota Law Review, 691, it was said: "The facts in the instant case (McMahon) show the legislature had already recognized the practice of usury as a social evil and had provided civil penalties therefor. Ought the court to assume jurisdiction to provide penalties beyond those provided by the legislature and attempt to remedy defects in legislation by the use of injunction? It would seem not." State ex rel. Goff *v.* O'Neil, 205 Minn. 366 (286 N. W. 316), was on its face a similar case, wherein a similar result was reached. The opinion states that in Minnesota, as in Kansas, the statutes forbidding the tak-

ing of usury do not subject the transgressor to a penalty by way of imprisonment or fine, and adds: "So there is no remedy for usury under the criminal law." The opinion in State Board of Dental Examiners v. Payne, 213 Ky. 382 (281 S. W. 188), lays down certain propositions which tend to support the position of plaintiff, but it is to be observed that the conception of a nuisance held by the Kentucky court is very different from the meaning of that term as defined in our Code and expounded in our decisions.

In State ex rel. Moore v. Gillian, 141 Fla. 707, in a brief opinion as reported in 193 So. 751, the Florida court ruled: "Where amended bill of complaint in effect alleged that respondents, holding themselves out as 'salary buyers,' were engaged in the short-loan business and unlawfully exacted payment of usurious interest on such loans, and that such practice constituted a violation of the criminal and civil laws of Florida, was a menace to the public welfare, and abatable as a public nuisance, motions to dismiss amended bill and demurrer to amended bill were properly overruled." Contrary to the ruling in the Florida case is that in Means v. State, by the Court of Civil Appeals of Texas, 75 S. W. 2d, 953, where it was ruled that injunction will not lie at suit of the State to restrain one from merely making loans of his own money at usurious rates of interest. In the opinion it was said: "What the evidence does show is that appellant was making small loans of money to laborers at an unconscionable and outrageous interest. It is easy to understand how a chancellor, with a commendable·desire to protect the unfortunate victims from such a pernicious practice, would seek to interpose the equitable powers of the court for its suppression. However, under the present state of the law, we do not think that an injunction will lie at the suit of the State to restrain one from merely making loans of his own money at usurious rates of interest. Contracts for the payment of usurious interest are void. The offended individual has his remedy by suit against the lender for recovery of double the amount of the usurious interest paid. See article 5073, R. S. 1925."

In State ex rel. Chicago &c. R. Co. v. Woolfolk, 269 Mo. 389 (190 S. W. 877), an injunction was sought to abate what was alleged to be a public nuisance, the transportation of liquor by railroad into a dry county. The court held it would be improper to grant the injunction. In the opinion it was said: "It necessarily

results from a consideration of the allegations in the injunction suit filed in the court below that their sum and substance was an averment of the violation of the three sections of the criminal law supra, which forbade, under penalties, the receiving, storing, keeping, or delivering, as the agent or otherwise, of intoxicating liquors, without a license as a dramshop keeper or wholesaler, or in any county that had adopted the local option law. It follows, under the principles above stated and in view of the restricted allegations contained in the petition for injunction, that a court of equity is possessed of no power to enjoin the mere violation of the provisions of these criminal statutes, R. S. 1909, §§ 7227, 7229. Neither does it appear from its tenor that the defective petition could be so amended as to state a case within the jurisdiction of a court of equity, nor has the respondent favored us with any suggestions as to its amendment. . . While we can not escape the conclusion that the trial court acted without jurisdiction of the subject-matter in awarding the temporary injunction, it does not follow that either the relator or any other persons will be permitted to disobey with impunity the statutes governing the storing and delivery of intoxicating liquors (except section 7226 held unconstitutional in State v. Rawlings, 232 Mo. 544, 134 S. W. 530); for those statutes are a part of the criminal law and should be enforced through the process of the criminal courts against all violators, and it is the duty of the prosecuting attorney to see that this is done."

People ex rel. Stephens v. Seccombe, 103 Cal. App. 306 (284 Pac. 725), is an instance where the State sought to abate a loan business on the theory that it was a public nuisance. The court refused to treat it as a nuisance, the ruling being that, where acts or conduct sought to be enjoined constitute merely crime or series of crimes, and not nuisance, neither specific nor preventive, relief can be granted, under Civil Code, § 3369.

*Dean* v. *State*, 151 *Ga.* 371 (106 S. E. 792, 40 A. L. R. 1132), was a case wherein the solicitor-general brought an equitable petition against Dean, a chiropractor, alleging that by practicing his profession without having obtained a license to practice medicine from the State Board of Medical Examiners, he was maintaining a public nuisance. Calling attention to the fact that the unlawful practice of medicine in this State is a misdemeanor, and that

none of the medical acts of this State undertake to extend the jurisdiction of equity over nuisances or to enlarge the category of public nuisances, it was held: "The mere fact that the plaintiff in error in practicing his profession without a license may be guilty of a misdemeanor will not authorize a court of equity to enjoin him from practicing his profession. If the medical acts of this State are applicable to the plaintiff in error, he is amenable to criminal prosecution. Unless the legislature sees fit to extend the jurisdiction of equity or to enlarge the category of public nuisances (conceding the power of the legislature so to do), equity will not enjoin the plaintiff in error from practicing his profession simply because in so doing he is violating the penal laws of the State (conceding the validity of the medical acts, as construed and applied by the chancellor)." That decision is in line with like decisions from foreign jurisdictions. People v. Universal Chiropractors Asso., 302 Ill. 228 (134 N. E. 4); Redmond v. State ex rel. Atty.-Gen., 152 Miss. 54 (118 So. 360); State v. Maltby, 108 Neb. 578 (188 N. W. 175). In the case last cited it was said: "If the penalty for any crime seems to be inadequate, equity will not for that reason interfere, for the relief must come from the law-making power, and not by extending equity into a field foreign to its purposes."

In *Bentley v. State Board of Medical Examiners*, 152 Ga. 836 (111 S. E. 379), it was ruled that the State Board of Medical Examiners was without power to file an equitable petition to enjoin one from illegally engaging in the practice of medicine in this State. It was there argued that the act creating the board conferred on it the power sought to be exercised. In meeting that argument, this court said: "It is made a crime for any person to practice medicine in this State without possessing in full force and virtue a valid license to practice under the laws of this State; and such person so practicing is declared to be guilty of a misdemeanor, and upon conviction of such offense he shall be punished for a misdemeanor, in accordance with section 1065 of the Penal Code of this State. Thus the statutes creating this board fully prescribed the means and methods of protecting the people of this State against illegal and unqualified practitioners of medicine and surgery; and when such means and methods are prescribed for such protection, they must be followed by this board. The board

can not resort to any other methods of protecting the people of this State. Certainly no other power of protection will be inferred from the acts creating this board. This court held that a court of equity, at the instance of the State, can not enjoin a person from illegally practicing medicine in this State. *Dean* v. *State* [supra]. If the State itself can not in equity protect the people of the State by enjoining one from illegally practicing medicine, then of course this board can not maintain a petition for such injunction; and this was recognized by the court below in striking so much of the prayers of the petition as sought injunctive relief. On principle and reason, the principle ruled in *Dean* v. *State* controls the case at bar."

In *Bennett* v. *Bennett,* 161 *Ga.* 936 (132 S. E. 528), it was sought, at the instance of the superintendent of banks, to enjoin acts substantially the same as those alleged in the instant case. The petition was dismissed on general demurrer. It was held that there was no law giving the plaintiff the right to maintain any such action, but the court went further. It analyzed the holding in *Bentley* v. *State Board of Examiners,* supra, and quoted from the opinion where it was ruled that the statutes creating the board having prescribed the means and methods for protecting the people of this State, the board could not resort to any other method; and added: "And so we may say of the act regulating the loan business, that the statute confers specific remedies and means for protecting the people of this State against illegal loans made by persons without a license, as provided by the terms of the act of August 17, 1920. In the case of *Dean* v. *State* [supra] it was said: 'A court of equity will not enjoin the commission of crime generally; but it has jurisdiction, and will in a proper case, at the instance of the State, restrain an existing or threatened public nuisance, though the offender is amenable to the criminal laws of the State.' There is no ground for holding that the acts against which an injunction is sought in this case amounted to a public nuisance; and if they were, the petitioner here is not the party to bring the suit for injunction." Of the *Bennett* case, it may be observed that only five Justices concurred, and therefore we are at liberty to disregard it as a precedent if we should be of opinion that it was erroneously decided. It may be said that the statement therein to the effect that a series of acts similar to those alleged in the instant

case did not amount to a public nuisance was obiter, since the court held that petitioner had no standing in court to bring the suit. Whether or not that part of the decision be obiter is immaterial, since, as heretofore pointed out, the *Bennett* case was by five Justices only. But we find inescapable the reasoning of Mr. Presiding Justice Beck in that particular. The statement accompanying this opinion gives a fairly complete summary of the allegations of the petition pertinent to the point here under discussion. The alleged public nuisance is not of such character as to justify a court of equity entering a decree enjoining its maintenance. The Code, § 25-201 et seq., deals with our statute law on the subject of buying wages or salaries; § 25-301 with the small loan business. Licenses are required; many regulations made respecting the business; penalties provided for their violation; the taking of usury and the violation of various provisions of the small-loan act are made misdemeanors. There is no suggestion anywhere in either the wage-buying or the small-loan act that a violation of its provisions shall constitute a nuisance, or that for repeated violations equity should issue an injunction. If the penalties there provided be not a sufficient check to the abuses described in the instant case, the appeal should be made to the lawmakers, and not to a court of equity, whose powers can never be invoked where the law has provided what it deems to be an adequate remedy.

*Judgment affirmed. All the Justices concur.*